neys for the Texas Co. and of E. N. Pugh, attorney for the Houssiere-Latreille Oil Co. and Father F. Rougé; and

On suggesting to the court that the parties have agreed upon a compromise of the only question left for decision in this case and now pending on rehearing and fixed for trial this day—i. e., the question of pipage claimed by the Texas Co., which the lower court fixed 'at 3 cents in the nature of a gathering charge, and this court, in its original judgment, fixed at 10 cents with a credit of 3½ cents on 80,000 barrels of oil in favor of Father F. Rougé; and

On further suggesting that the compromise so agreed upon is that the Texas Co. shall be allowed a charge of 4 cents a barrel as a charge covering both the 3-cent charge allowed by the lower court, and the 10-cent charge allowed by this court without any credit to Father Rougé of 3½ cents on 80,-000 barrels of oil;

It is ordered, adjudged, and decreed by the court that the first paragraph of the final decree heretofore entered in this case which reads:

"(1) By allowing the Texas Co. (instead of as allowed by said judgment) storage and pipage (less 3½ cents per barrel on 80,000 barrels, which has been paid by F. Rougé) upon the basis agreed in the contract of September 26th, 1904, with the sheriff"

—shall be changed to read as follows:

"(1) By allowing the Texas Co. (instead of as allowed by said judgment) storage charges at one cent per barrel per month and pipage charges of four cents a barrel, said four cents to be substituted in lieu of three cents gathering charge allowed by the lower court, and to be calculated on 228,612.33 barrels of oil as against the Houssiere-Latreille Oil Co. and on 114,-024.78 barrels of oil as against Father F. Rougé."

It is further ordered, adjudged, and decreed that as thus amended the previous decree of this court be affirmed, and that the mandate in this cause be sent down to the lower court.

(54 South. 329.)

Nos. 17,712 and 18,155.

LEVERT v. BERTHELOT et al.

(Jan. 17, 1910. On Rehearing, Nov. 28, 1910. On Application for Second Rehearing, Jan. 3, 1911. Dissenting Opinion Feb. 7, 1911.)

*(Syllabus by the Court.)*

On Motion to Dismiss.

1. JUDGMENT (§ 218*)—ON TRIAL OF ISSUES— FORM AND REQUISITES.

A judgment which, after reciting that "this case having been submitted to a jury, and the jury having returned with a verdict of nonsuit against the demand of the plaintiff, a verdict of nonsuit against the reconventional demand of the defendant and against the intervention and third opposition of the opponent and the intervener, it "is therefore" ordered, adjudged and decreed that the demands of said parties, to wit (naming them) be dismissed as of nonsuit, manifestly adopts and makes the verdicts of the jury the basis of the judgment, and is sufficient. McDonough v. Thompson, 11 La. 566.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 395; Dec. Dig. § 218.*]

2. APPEAL AND ERROR (§ 281*)—PRESENTATION OF QUESTIONS IN LOWER COURT—MOTION FOR NEW TRIAL—NECESSITY.

The constitutional right to appeal from the verdict of a jury is not lost by a failure to apply for a new trial. Kramer v. City & Lake R. R. Co., 51 La. Ann. 1689, 26 South. 411.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1650–1661; Dec. Dig. § 281.*]

*On Prayer to Amend Judgments.*

3. APPEAL AND ERROR (§ 878*) — REVIEW — PARTIES ENTITLED TO ALLEGE ERROR—APPELLEE.

Where, by the verdict of the jury, the demand of the plaintiff was nonsuited, as was also the reconventional demand of the defendant and likewise the demand of the third opponent and intervener, and thereupon the plaintiff appealed and the third opponent and intervener did not appeal, the two latter as appellees are not entitled on the appeal of the plaintiff to bring before the court for adjudication the demand in reconvention of the defendant, or that of the third opponent and intervener. The intervener is not before the court at all. When the intervention was thrown out of court and dismissed, intervener's connection with the case ended. It could only be retained through an appeal taken by itself.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3573–3580; Dec. Dig. § 878.*]

## On the Merits.

**4. AFFIRMANCE OF JUDGMENT.**

The verdict of the jury and the judgment appealed have done justice to all parties, and they are affirmed. Weill v. Kent, 52 La. Ann. 2139, 28 South. 295.

## On Rehearing.

**5. ABATEMENT AND REVIVAL (§ 81*)—PRE-MATURITY—WAIVER.**

Prematurity is a special defense which must be timely filed in order that it may be of avail.

No such plea was ever filed, and in consequence it will not be held that the action was premature.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. § 500; Dec. Dig. § 81.*]

**6. SEQUESTRATION (§ 16*) — PROCEEDINGS — PLEADING AND PROOF.**

The usual grounds for sequestration were set forth, and were sustained by an oath. This was prima facie evidence, and is sufficient in the absence of a plea of defendant of insufficiency of testimony to sustain the writ.

[Ed. Note.—For other cases, see Sequestration, Dec. Dig. § 16.*]

**7. AGRICULTURAL LIEN — PRIORITY—RECORD—INTERVENER'S CLAIM FIRST — PLEDGE — PAWN.**

Plaintiff's claim for advances on a crop was second in point of right to the claim of the intervener, whose claim was duly recorded. The former had not sought to secure his claim by a written act and a "pledge" and "pawn." He only had an ordinary account for advances, which he had recorded prior to the date of the contract. It did not secure preference, as under decisions of this court the "pledge" and "pawn" of the crop had preference.

[Ed. Note.—For other cases, see Chattel Mortgages, Dec. Dig. § 138.*]

**8. PLEDGE — PAWN — PRIORITY — CONSTRUCTION—DEBT SECURED—FUNDS NOT APPLIED TO CROP.**

Part of intervener's advances with the consent of the intervener was diverted to the payment of debts not secured by "pledge" and "pawn," and not within the terms of the contract of the intervener with defendant regarding advances.

The amount thus misapplied is deducted from the claim of the intervener.

The result is that there remains an amount over that necessary to pay plaintiff's claim.

[Ed. Note.—For other cases, see Chattel Mortgages, Dec. Dig. § 138.*]

**9. LIEN — PRIORITY — CLAIM FOR DAMAGES — PLEDGE—PAWN.**

Defendant claims an amount as damages for plaintiff's failure to continue in making advances on the crop.

The claim is not sustained by preponderance of evidence.

The intervener limited its claim to the amount for which they had a "pledge" and "pawn" as secured by contract. It was subjected to the deduction before stated.

The intervener not having made claim to any other sum, the allegation being amount due on the contract of "pledge" and "pawn," the intervener cannot recover beyond the amount stated in the contract.

Judgment for plaintiff.

Judgment for intervener to the extent that their advances were applied to the cultivation and gathering of the crop.

[Ed. Note.—For other cases, see Chattel Mortgages, Dec. Dig. § 138.*]

Provosty, J., dissenting.

## On Application for Second Rehearing.

**10. APPEAL AND ERROR (§ 830*)—REHEARING —SUCCESSIVE REHEARING.**

A decree on rehearing being final when rendered, an application for a second rehearing cannot be entertained, unless the decree contains a reservation for such application.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3214; Dec. Dig. § 830.*]

Appeal from Twenty-First Judicial District Court, Parish of Iberville; C. K. Schwing, Judge.

Action by John B. Levert against Joseph B. Berthelot, and the Louisiana Sugar Company filed a third opposition and intervention. From a judgment for defendant, plaintiff appeals. Judgment for plaintiff and for intervener to the extent that its advances were applied to the cultivation and gathering of defendant's crop.

E. B. Talbot and Ross E. Breazeale, for appellant. Alex Hebert and Clarence S. Hebert, for appellees.

## Statement of the Case.

NICHOLLS, J. Plaintiff alleged: That defendant was indebted to him in the sum of $3,155.13, with legal interest, for this: That, desiring to cultivate and make a rice crop on his plantation situated in the parish of Iberville, he (plaintiff), in order to accommodate him, consented to temporarily make the necessary advances in cash and

supplies for said crop until defendant could make arrangements for advances with other parties (which had been done by him), and, when said arrangements were so made, the advances made by petitioner were to be paid back or reimbursed.

That from December 14, 1907, to the 27th of March, 1908, inclusive, petitioner advanced cash and supplies to the said Berthelot, including interest, to the amount of $3,155.13, as would appear from an account annexed, which had been acknowledged by the said Berthelot. And that he had a privilege for the said advances on the crop of rice then being made or raised on said plantations, and that the sworn account for said advances had been recorded in the office of the recorder of this parish as required by law.

Petitioner prayed: That the said Joseph B. Berthelot be cited, and that he have judgment against him for the sum of $3,155.13, with legal interest, from March 11, 1908, on $3,132.94 until paid, and all costs of suit.

That the privilege on the said crop of rice then being raised on said plantations be recognized, and in duty bound for all general and equitable relief.

Defendant answered. After pleading a general denial, he then assumed the position of plaintiff in reconvention, alleging that, at the beginning of the planting season, he made arrangement with the plaintiff, John B. Levert, whereby the said Levert agreed to advance appearer or procure said advances for appearer, to make, cultivate, and harvest a crop of rice on his Virginia and other properties during the year 1908, said advances to become due and payable out of the sale of the said rice crops. That said Levert, when the time arrived to draw up and sign formal contracts evidencing said agreements, withdrew and absolutely refused to carry out his said agreements. That in consequence, late in season, and in the midst of a financial stringency, appearer was forc-

ed to secure elsewhere the advances that the said Levert had agreed to make to appearer. That said breach of contract of said Levert caused appearer worry, inconvenience, loss of time, and mental and financial trouble, for which appearer claimed the sum of $1,500 damages, and appearer claimed the further sum of $1,500 as punitory damages against the said Levert for said breach of contract.

Appearer prayed that the suit of plaintiff be dismissed at his cost; that appearer have judgment on his demand in reconvention against John B. Levert in the full sum of $3,000, with 5 per cent. per annum interest thereon from judicial demand until paid, for trial by jury, and for costs and general relief.

On August 24, 1908, plaintiff filed an amended petition, alleging that the crop of rice on the defendant's plantation had matured, that a large portion had been harvested and disposed of, and that a considerable portion remained to be gathered, and a small portion had already been harvested and was then on the place, and that he feared that the defendant would conceal, part with, or dispose of the crop during the pendency of this suit. He asked for a writ of sequestration, which was granted. On August 28, 1908, defendant presented a petition to the court to bond the property which had been seized, and obtained an order for this purpose and executed a bond of release on August 31st. On September 28th defendant filed a motion to dissolve the writ of sequestration on various grounds, which was overruled. On October 12th the Louisiana Sugar Company filed a third opposition and intervention in the case, alleging that on the 11th day of March, 1908, it entered into contract by notarial act with the defendant for advances for $14,000 for the purpose of making, cultivating, and harvesting a rice crop on his plantation for the year 1908,

which up to the time of the harvesting of the crop had been advanced and expended, for which it had a right to be paid by privilege and preference out of the proceeds of the crop raised on the plantation, and particularly that portion which had been seized and sequestered; that its rights were secured by privilege on the crop and pledge thereof and a special mortgage; that on plaintiff's application the sheriff of the parish of Iberville had under order of the court sequestered a portion of the crop on which it had a privilege. It obtained a leave to file a third opposition, under which the plaintiff and sheriff were ordered to show cause why it should not be paid by privilege and preference out of the proceeds of the crop sequestered the amount of its advances. Plaintiff answered the third opposition, claiming the privilege of a higher rank than that of the Louisiana Sugar Company. On these issues the case went to trial before a jury. During the trial plaintiff objected to any evidence on the part of defendant to establish damages claimed by him on the ground that the allegations in the answer were indefinite and vague, and, further, because, in the absence of an allegation of bad faith on the part of Levert, nothing but actual damages could be proved. The objection was sustained, and defendant excepted. Thereupon defendant asked leave to amend his answer so as to meet plaintiff's objection, but the court refused to allow the amendment, and a bill of exceptions was reserved. The jury rendered a verdict of nonsuit against the demand of all parties. Thereupon the court rendered judgment making the verdict executory. Levert has appealed. The defendant and the third opponent did not do so, but have moved to dismiss the appeal, and, in the alternative and under reservation, answered the appeal, asking that the judgment of the lower court be amended.

The defendant Berthelot moved to dismiss the appeal on the ground that the plaintiff and appellant had not exhausted all of his remedies in the lower court, in this: that he failed to make application to the trial court for a new trial of said case. He averred that a formal judgment based entirely on the verdict of the jury was written up and signed by the judge of the district court dismissing the demands of all parties as in cases of nonsuit, but mover specially pointed out that there were no words or language of any kind in said formal judgment of nonsuit such as "the law and the evidence being in favor of this judgment" or "the verdict of the jury being in accord with the law and the evidence," or "the law and the evidence being in accord with the verdict of the jury and this judgment," etc., which might be taken to be a concurrence by said judge in said verdict of nonsuit by the jury that the plaintiff having failed to make application for a new trial, and having failed to invoke the concurrence vel non or any ruling of any kind upon the verdict of the jury in the case of the subject-matter in dispute has not exhausted his remedies in the lower court, has acquiesced in the verdict of nonsuit, rendered by the jury in this case, and is without right or standing on any appeal to the Supreme Court.

The Louisiana Sugar Company, describing itself as intervener and appellee, moved to dismiss the appeal on the same ground.

The alternative prayer of the defendant Berthelot for an amendment of judgment was that the judgment appealed from be so amended as to allow him a judgment on his demand in reconvention for the sum of $3,000, with legal interest from judicial demand until paid, and to condemn plaintiff to pay costs in both courts as prayed for by defendant.

The alternative prayer of the Louisiana Sugar Company, describing itself as third op-

ponent, intervener, and appellee, in the case for an amendment of judgment, was that the judgment appealed from should be so amended as to dismiss the demand of the plaintiff, and allow intervener and third opponent, the Louisiana Sugar Company, a judgment against John B. Levert and the sheriff of the parish of Iberville, recognizing intervener's claim to be paid by privilege and preference the sum of $14,000 out of the proceeds of the crop of defendant Berthelot seized and sequestered, in this case as against all parties and particularly as against John B. Levert, and condemning plaintiff, Levert, to pay costs in both courts as prayed for in intervener's petition.

Defendants' motion to dissolve the sequestration was based upon allegations that no legal bond had ever been furnished, and that the pretended bond filed for said sequestration was absolutely null and void, for the following reasons, among others, to wit:

"(1) That said bond was dated November 24, 1908.

"(2) Said bond recited that J. B. Levert appears as principal, but his signature is nowhere attached thereto.

"(3) Said bond does not pretend upon its face to bind any one as surety, nor from its contents is there any way to hold any one as surety thereon.

"(4) Said bond is signed by 'E. B. Talbot, Agent,' but there is nothing upon the face of the bond to justify the signature of an agent thereto, nor is there any statement on the bond or references in the body thereof showing in whose behalf or for what purpose the signature 'E. B. Talbot, Agent,' is attached.

"(5) That the signature 'John Deblieux' is not identified with the bond by any language justifying his connection therewith, or fixing any responsibility whatever on said Deblieux.

"Mover shows that he was compelled to bond said illegal writ of sequestration in order to obtain the release of the property seized by the sheriff at an expense of $17 to the bonding company, and was further put to the expense of employing attorneys to have said sequestration set aside; that the services of said attorneys are worth fully the sum of $150, for which mover should have judgment against the plaintiff, J. B. Levert, with legal interest from judicial demand.

"Wherefore, mover prays that the writ of sequestration sued out in this case be dissolved by the court, and that there be judgment in his favor and against the plaintiff, J. B. Levert, in the full sum of $167, with 5 per cent. interest thereon from judicial demand until paid for the wrongful issuance of said sequestration and the wrongful seizure of mover's property, and further prays for costs and general relief."

The bond attacked was as follows:

"Know all men by these presents that we, John B. Levert of the city of New Orleans, as principal, and ——, as security, resident of the parish of Iberville, are held and firmly bound unto Joseph A. Grace, clerk of the Twenty-First judicial district court of Louisiana, in and for the parish of Iberville, in the full sum of fifteen hundred dollars, for the payment of which we bind and obligate ourselves our heirs and assigns firmly by these presents. In testimony whereof we hereunto set our hands at the parish of Iberville this 24th day of November, 1908. The condition of the above obligation is such that, whereas the above bounden, John B. Levert, has filed in the aforesaid Court, in the cause entitled John B. Levert v. Joseph B. Berthelot, a petition and order praying for a writ of sequestration to issue to the sheriff of the parish of Iberville, commanding him to seize the crop of rice in the field or harvested on the property of defendant, or a sufficient amount of property sufficient to satisfy the claim of the said plaintiff in said cause.

"Now, if the said above bounden, John B. Levert, shall well and truly pay any and all damages which the said defendant shall suffer in consequence of the wrongful issuance of said sequestration, then and in such case this obligation shall be null and void, otherwise to remain in full force and virtue.

"[Signed] E. B. Talbot, Agent.
"[Signed] John Deblieux.
"Signed in the presence of:
"[Signed] Philip G. Rhorer."

## On the Motion to Dismiss.

The grounds assigned for a dismissal of the appeal are without force.

1. A judgment which after reciting that "this case having been submitted to a jury, and the jury having returned with a verdict or judgment of nonsuit against the demand of the plaintiff, a verdict of nonsuit against the reconventional demand of the defendant and against the intervention and third opposition of the opponent and intervener, it is therefore ordered adjudged and decreed that the demands of said parties, to wit [naming them] be dismissed as of nonsuit,"

manifestly adopts and makes the verdict of the jury the basis of the judgment so rendered, and is sufficient. McDonough v. Thompson, 11 La. 566.

2. The constitutional right of appeal from the verdict of a jury is not lost by a failure to apply for a new trial. Kramer v. City & Lake R. R. Co., 51 La. Ann. 1689, 26 South. 411.

### On Prayer to Amend Judgments.

Where by the verdict of the jury the demand of the plaintiff was nonsuited as was also the reconventional demand of the defendant, and likewise the demand of the intervener, and thereupon the plaintiff appealed, but the defendant and intervener did not, the latter as appellees are not entitled on the appeal of the plaintiff to bring before the court for adjudication on the appeal the demand of the defendant in reconvention and that of the intervener on its intervention under a prayer for an amendment of the judgment appealed from.

Those parties are not seeking an alteration of a judgment which the plaintiff has obtained in his favor, but the absolute reversal of the judgments which had been rendered against them, respectively, on their individual demands. We do not think that the intervener is before the court at all. He was not made a party by the plaintiff, but on his own motion connected himself temporarily with the case by an intervention granted him by leave of court. When the intervention was thrown out of court, intervener's connection with the case ceased, unless it should have been maintained through an appeal taken by itself.

We understand the case under present existing conditions to be simply one between the plaintiff on his demand and the defendant purely as such (that is, with his reconventional demand eliminated) while the plaintiff has been thrown out of court by a judgment of nonsuit, leaving the writ of sequestration still standing after the defendant had been placed in possession of the property sequestered under a forthcoming bond as he, as shown by the evidence, has turned it over to the intervener.

We are not informed as to the theory or ground on which the jury acted in nonsuiting all parties. We infer that it was of the opinion that the throwing of the plaintiff out of court carried with it as a necessary consequence the dismissal of the entire case. We think that as matters stand the only parties properly before us asking relief are the plaintiff, who is seeking the recognition of his own rights, and the defendant, who is resisting the present proceedings.

It will be seen by reference to plaintiff's pleadings he claims that in making advances personally he had done so temporarily in order to enable him to tide over the interval between the dissolution of the firm of Levert, Burguieres & Co., which had been advancing the defendant for a number of years past and the obtaining by him of advances from other parties, in which event his temporary advances were expected to be taken up by the parties so subsequently making them and carried forward for the year as part of their advances for that year. He and the witness Tremoulet testified to that effect, but the defendant testified that such was not the fact; that the understanding was that his advances were to be paid for out of the proceeds of the crop of the year.

The jury was evidently of the opinion that the bringing of the present suit by the plaintiff was premature and unnecessary; that by the recording by him of his account and giving notice to the intervener plaintiff could have fully protected his rights in the premises, and they were in fact fully protected; that he had himself suggested to the defendant that he should obtain advances from other parties, and therefore contemplated necessarily that defendant should ship his crop

to those parties in due course of business. It therefore nonsuited the plaintiff, leaving him to proceed by direct action hereafter for the enforcement of his rights contradictorily with defendant and the intervener. We may say incidentally that we are not of the opinion that the plaintiff undertook to make advances to the defendant for the entire year 1908. What he did was in the way of assistance to him in extricating him out of an existing financial difficulty.

We are of the opinion that by the verdict of the jury and through the judgment appealed from justice has been done to all parties. Weill v. Kent, 52 La. Ann. 2139, 28 South. 295.

The judgment is therefore affirmed.

MONROE, J., concurs.

On Rehearing.

BREAUX, C. J. The two appeals (17,712 and 18,155) were consolidated after rehearing was granted in the latter case.

This was done in accordance with agreement of counsel.

In the first judgment this court held, as had the jury in the district court, that the present suit by the plaintiff was premature and unnecessary.

The plea of plaintiff for the rehearing, which this court granted, was that defendant had pleaded the general issue, and had not interposed an exception of prematurity. The case was reargued on the rehearing both orally and in briefs.

Rehearing was granted. The question is now before us for decision.

The facts being that defendant did not plead prematurity of plaintiff's suit, never made the least objection on that score, there was no good ground for holding that the suit was premature.

The claim of plaintiff was for advances to the defendant on his crop. If there were reasons for pleading prematurity, it was never alleged. The fact is that on the face of the papers the claim was due. In any case, the prematurity urged in this case falls within the ordinary rule that such a plea must be filed in limine.

If the suit was premature, why was prematurity not alleged. The plea cannot be supplied. It certainly cannot avail in any case without the plea pleaded.

After issue joined, prematurity is not an available plea.

Plaintiff's claim:

The amount claimed is due. It is not contested. Plaintiff is entitled to the amount as between plaintiff and defendant.

We have clearly stated, in substance, that the prematurity urged in argument cannot be of any avail in defense. Judgment will, therefore, be entered for plaintiff.

Sequestration:

Defendant's motion to dissolve the writ was overruled.

The only ground urged by defendant and appellee in his brief is that plaintiff has offered no evidence against the defendant as to the sequestration; that the evidence is absolutely silent as relates to the sequestration or the cause which influenced plaintiff to sue for a sequestration.

With reference to the grounds urged in the motion to dissolve, we reiterate that which was said in the opinion heretofore handed down.

The motion to dissolve filed in the district court does not allege the point argued. No complaint is made on the score that plaintiff failed to make proof of the cause for apprehending that the property would be canceled, parted with, or disposed of, unless prevented by a writ of sequestration.

In the absence of any plea by defendant to set aside the sequestration on the ground that there was no cause for any such apprehension, we must decline to sustain the point.

If there was ground, it should have been pleaded.

The intervention of the "Louisiana Sugar Company, a creditor of the defendant for advances":

The facts with reference to this intervention are that interveners bound themselves to make advances to the defendant in the amount of $14,000. They entered into a written contract to secure a pledge and pawn on his crop which was duly recorded.

We have noted that prior to the contract between interveners and defendant plaintiff had advanced $2,937.81 to defendant. He had his sworn account for that amount duly recorded on March 14, 1908.

Plaintiff's agreement with defendant to advance to the latter is evidenced by letters and testimony of witnesses.

The intervener, "the Louisiana Sugar Company," has a superior right to the plaintiff for all amounts of the $14,000 which was used to enable the defendant to make and gather his crop.

Under former jurisprudence plaintiff's claim would have been first in rank of privilege as it is first in date. Flower & King v. Skipwith, 45 La. Ann. 895, 13 South. 152.

This decision has been overruled. As made evident by the following, the rule laid down affected the property rights of parties, and for that reason it was stated that the court would not set aside prior ruling without ample notice that, if ever the question thereafter came up again, it would be reconsidered. La. Grocer Co. v. Adams, 112 La. 75, 36 South. 226.

In Maxwell-Yerger Co. v. Rogan, 125 La. 14, 51 South. 48, the question was again presented to this court and in accordance with the second decision cited, supra, it was reconsidered, treated as res nova with the result that under the last-cited decision intervener's pledge has priority over plaintiff's privilege.

Under act 89 of 1886, fixing the rank of privileges and pledges, the pledge is first in point of right; accordingly, defendant's pledge is superior to plaintiff's privilege.

The defendant:

He is a rice planter, and for years he had obtained advances from plaintiff's firm.

The firm was dissolved some time prior to 1908.

The plaintiff, Levert, entered into a temporary agreement with defendant Berthelot to lend him an amount to enable the latter to pitch his crop of rice.

There arose disagreement between plaintiff and defendant in regard to the amount of the advances to be made.

The defendant, being an old customer of plaintiff, assumed from conversations and letters with plaintiff that the amount necessary to cultivate and gather the whole crop would be advanced.

That was not the understanding of plaintiff.

After having read and considered the letters, we arrived at the conclusion that the defendant has not sustained this ground with preponderance of testimony.

The lower court did not allow the claim of defendant for damages.

We have not found that the court erred.

The intervener:

The company intervening claimed in its petition of intervention the sum of $14,000, secured by pledge, duly inscribed.

The company is entitled to the whole of the advances made by it which were used in cultivating and gathering the crop. A part of the advances we will see later was not so used.

This amount was the $14,000 before mentioned, claimed in the petition—nothing more.

Although it was the agreement that this sum would be advanced, as before stated, the defendant, with the consent of interveners, used an amount of $4,729.19, with which de-

fendant paid another debt; that is, interveners, instead of paying themselves and satisfying their claim, permitted the defendant to pay another debt not secured by pledge or privilege on the crop.

Having received the crop to an amount sufficient to pay their claim, they must be charged in this settlement with the amount received, which went to the payment of an unsecured claim. Gay v. Pike, 30 La. Ann. 1332; Minge & Co. v. Barbre, 51 La. Ann. 1285, 26 South. 180.

Interveners received a considerable sum over and above the amount of their pledge. The defendant remained indebted to the company for an amount over $7,000.

This does not change the situation, for the second loan was the sum before mentioned. If other advances were made, they would not be so managed as to increase the amount of the pledge above the sum stated. The moment the interveners received amounts— net proceeds—they should have been credited on the $14,000 advances. The interveners could not pay them in satisfaction of other but unsecured claims.

The asserted imputations of payment:

The defendant does not insist that the amount paid to another creditor on another account not secured be credited on the advances for the year 1908, nor does the intervener. He insists, however, that he had a right under the contract to impute the first proceeds of defendant's crop to the payment of the subsequent cost of cultivating and marketing the crop.

The interveners do not claim a privilege or pledge in their pleadings for any other amount than that covered by the contract— i. e., the $14,000—and the company asked to be paid by preference and priority from the whole proceeds of the crop and particularly that realized under the sequestration.

The interveners have not asked in the pleadings for any amount save that before stated.

After that sum had been collected from the proceeds of the crop, it was not possible to continue advancing and remain secure under the pledge and privilege for the whole amount of the mortgage, pledge and privilege as if they were blanket securities under which new loans and advances could be secured.

"Contracts made with factors to give them a privilege or pledge on crops must stipulate the sum to be secured by such privilege or pledge, and no further sum than that stipulated and fixed can be covered by contract to the prejudice of creditors." In any event, no further sum than that claimed in the petition of intervention can be allowed.

We do not conceive it possible under the law to enter into a contract of mortgage to advance say $14,000, and subsequently advance to enable the planter to gather and send his crop to market, and deduct this amount from the proceeds of the crop, and still retain security on the crop for the whole mortgage; i. e., for the fourteen thousand dollars.

The advances were made to cultivate, gather, and send the crop to the market.

Whatever is advanced must be considered as secured by mortgage.

The right reserved by the merchant in his mortgage of imputation to other debts than his mortgage cannot work to the prejudice of another creditor who has a mortgage on the crop.

An illustration:

A commission merchant advances $14,000 to a planter, and secures the amount by mortgage and privilege.

In the contract he reserves the right to make imputations of amount, as he deems proper, as intervener in this instance contends it has.

At the end of the year he reserves the mortgagor's crop amounting to $30,000, and assumes the right to dispose of $16,000 as he pleases, or, let us say, assumes the right

to dispose of it as if there were no other privilege on the crop.

This cannot legally be done. It would be stretching a mortgage security beyond all limits.

The advances, many of them, were made after the seizure under the writ of sequestration.

The statement of the account of the interveners—the Louisiana Sugar Company—shows amount received from the defendant, $6,333, price brought by the crop seized in the case, all of which should be credited on the advances, as interveners urge, leaving due to the interveners, $2,937.81.

There was nothing improper or concealed in this case. It is only a question of priority of claim.

There remains nothing else of the crop of 1908.

This crop is the bone of contention.

The amount which goes to make up the balance was advanced after the seizure and after defendant had furnished an indemnity bond and had taken the proceeds in his possession.

It was not possible to thus increase the amount, and at the same time retain a right under the contract securing pledge.

It is therefore ordered, adjudged, and decreed that the verdict and judgment appealed from are avoided, annulled, and reversed at defendant Berthelot's costs in both courts. The demand of the intervener is rejected as against plaintiff at its costs in both courts.

It is further ordered, adjudged, and decreed that plaintiff have judgment for the amount of his claim, viz., $3,155, with legal interest from March 1, 1908, on $3,132.94 until paid, and costs out of the funds realized from the defendant's crops sequestered. Plaintiff's privilege is recognized on defendant's crop to said amount, the remainder of the said proceeds, if any, to be paid to intervener. The motion to dissolve the seques-tration is overruled at costs of plaintiff in motion.

The prior decree of this court is annulled and reversed. Costs of appeal to be paid by defendant.

PROVOSTY, J., dissents.

On Application for Second Rehearing.

LAND, J. Under the rules of this court, "only one rehearing will be granted, unless matters are decided on the rehearing which had not been previously considered, and reservation is made by the court for another application." As a judgment on rehearing becomes final as soon as rendered, it follows that such reservation must be made in the decree on rehearing. This court has no jurisdiction to reopen its final judgments.

Motion dismissed.

See dissenting opinion of PROVOSTY, J., 54 South. 335.