On Rehearing.
MONROE, C. J. The
theory of this case, as propounded by plaintiff, in his petition, was, that Erickson (his superior officer) directed him to paint the hatch (cover); that it was necessary for him to have a plank laid across the hatch (way), upon which he could stand while engaged in that work; that Erickson undertook to provide the plank and went, himself, upon the wharf, and, having obtained it, laid it across the hatchway to serve the purpose stated; that plaintiff took the position, and was engaged in the work, to which he was thus assigned, when Erickson walked out upon the plank, giving furthér instructions, and the plank, not being strong enough to sustain his added weight, .".broke thereby precipitating them both into'the hold of the ship.
The following are the allegations of the petition covering the matters thus stated:
“Petitioner avers that, in order to do the work, it was necessary to place a plank across said hatch, and that the officer in charge, and under whom he was at the time doing the work assigned to him, did place a planking across the said hatch; that the said officer, not having a piece of board at the time, handy, left the vessel and, from the wharf to the said S. S. Ohalmette to which it was moved” (meaning, as we take it, from the wharf to which the steamer was moored) “obtained a piece of planking and placed it across the said hatch and assigned your petitioner thereto on which to do the painting.
“That your petitioner was carrying out the orders and instructions of the said officer * * * when the said Erickson walked out on th'e plank, and was giving further instructions to your petitioner * * * when the said planking broke. * * *
“That petitioner, resting secure in the assumption that his employer would provide, and had provided, a suitable and secure place in which to do the work assigned to him, remained standing on the plank or board, and the officer shouid have known of its weakness ana not caused its collapse by placing his additional weight thereon,” etc.
There is attached to the petition the affidavit of the plaintiff to the verity of his allegations, and “that he knows the same of his own knowledge.” On his direct examination, as a witness in his own behalf, he testified that Erickson took him from the place where he was working, to paint the hatch, which was down between decks, and his examination proceeds:
“Q. What did he say to you when he got you between decks? A. He said he would have to go on the dock and get some planks; so he goes out and picks up some planks from the dock and turns them over, and he said they were all right — to take them; so he had me to carry them across there, and he kept walking up and down, and said tfiey were all right. Q. After you had placed those planks there, and he said they were all right, did you start painting? A. I took hold of the planks and sprung on both, and got some paint and started to paint right away. I was painting there over an hour, and had half of the hatch done when he came rushing along, and, all at once, the plank broke, and both of us went down. * * * Q. Did he ever warn you as regards those planks? A. No, sir; he said they were all right before I went to work on them. I had half of it done when the rush came on to me, and he rushed on me, and I didn’t have a chance to take the brush up, and he started to me, and the plank broke, and we both went down in the hold.”
It was therefore not true,, as alleged in the sworn petition, that it was Erickson who "obtained a piece of planking and laid it across the said hatch,” and “assigned petitioner thereto, on which to do the painting.” *127 Nor was it true, as so alleged, that “petitioner, resting secure in the assumption that his employer would provide, and had provided, a suitable and secure place in which to do the. work assigned him,” remained there, etc.
It was plaintiff himself who brought the planks from the wharf to the ship and laid them across the open hatchway, and he took his stand upon them, not resting secure in any assumption as to what his employer may have done, hut after he had tested them to his own satisfaction. It will be observed that he alleges, in his petition, that Erickson “obtained a piece of planking,” etc., but that, in his testimony, he says that Erickson “goes out and picks up some planks and turns them over, and * * * said they were all right, to take them,” and that he (plaintiff) carried “them across there.” The difference between a single piece of planking, and the “some planks,” to which he refers, figures rather conspicuously in the case, however; for, according to the evidence, he carried first one plank aboard the ship, and then another, and there were circumstances connected with the matter which, one would suppose, would have impressed that fact upon his memory. Thus Berry, who was working between decks, and who says that his head was only four or five feet below the first plank when it was laid across the hatchway, testifies that he called plaintiff’s attention to the fact that it was broken and rotten, and he says that plaintiff tested the plank with one foot, holding onto the hatch, and then went off, and in a minute or so after (quoting from the testimony of Berry), “he came back with another plank, a little narrower than the first one; that plank was broke also, and we -used them on the elevator, so they would not run over the trucks, and I saw him put the other plank, and I hollered that it is broke, and he never answered, and the second time I hollered, he answered in an angry way, ‘All right, I see it;’ and I said, ‘You will be all right if you get down in that hold;’ and so he put the plank on top of the other and got his paint and brush and came on the two planks and he started to paint, and I looked for the planks to break and he started the job, and, after painting a little piece, he went off on the port side of the ship. In the meantime, while he was off, the second mate came, and saw that the job was started and nobody there; * * * there was nobody on the run when the mate came, * * * and he went on the run, and I told him to watch out for that run; I don’t think it is very strong; and he took hold of the run with one hand and tested it, and said, T guess it will hold me;’ and he started to paint, and, in two or three minutes, the sailor came back, on the starboard side, and the mate was painting with the same brush that the sailor had, and, when the sailor came from the forward end of the ship, he got on the gangway and made two or three steps, and he fell down,” etc.
The testimony of Roth corroborates that of Berry, to the effect that plaintiff was warned by Berry about the condition of the planks, and Berry, Roth, and Adams agree, and corroborate Erickson, to the effect that the latter alone was on the planks when the plaintiff went on them and they broke. Our conclusion is that Erickson had probably seen some planks on the wharf- — though how many there were does not appear — and told plaintiff to provide himself therefrom with whatever might serve the purpose of a stage, or platform, but he did not tell him to use any planks that were broken or rotten, and the doctrine whereby the master is held to the exercise of superior intelligence in regard to the danger which may threaten the servant does not go to the extent of requiring that a man of mature age and apparently fair intelligence should be regarded as in *129 capable of distinguishing between a broken and rotten plank and a sound one. But, even, if if; were otherwise, there are the two witnesses who testify that plaintiff was specifically warned that the planks in question were unsafe, and we find nothing in the case which would authorize the belief that they dreamed or concocted that warning, any more than that the four witnesses (Erickson, Berry, Roth, and Adams) dreamed dr concocted the story that it was plaintiff who went on the planks when Erickson was already there, and not Erickson who went on them when plaintiff was already there. Moreover, though plaintiff alleges in his petition that Erickson “walked out on the plank and was giving him further instructions when the accident occurred,” he does not mention the instructions in his testimony, and we are at a loss to conceive why, if Erickson had any further instructions to give, he should not have given them while standing on the deck, since the hatchway was only ten or twelve feet square, and the mate of a ship can usually make himself heard for a distance of five or six feet. On the other hand assuming that plaintiff had left his job for some purpose of his own, and, upon his return, found the mate working in his place, it can readily be imagined that he would be disposed to show some extra alacrity in re-establishing the normal situation, and would, perhaps, expect the mate to lay down the paintbrush and walk out on one end of the plank, while he walked in on the other end; and that is what might have happened, if the plank had not broken. His walking in, under the circumstances disclosed by the evidence, was negligent, and was the direct, proximate cause of the accident, áñd he cannot visit the consequences on the defendant. It has been argued that defendant forfeited the right to a hearing on the appeal by failing to apply for a new trial; but the right of appeal is granted by the Constitution, and the grant does not distinguish between eases in which new trials are applied for and those in which no such applications are made.
The question has been decided adversely to the contention of plaintiff’s counsel in Kramer v. N. O. City & L. R. Co., 51 La. Ann. 1693, 26 South. 411, and Levert v. Berthelot, 127 La. 1012, 54 South. 329.
The judgment heretofore entered in this ease is therefore reinstated and made final.
PROVOSTY and O’NIELL, JJ., dissent.