183 So. 212

## GUMBEL v. NEW ORLEANS TERMINAL CO.

No. 34867.

June 27, 1938.

Rehearing Denied Aug. 5, 1938.

P. M. Milner, of New Orleans, for appellant.

Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for appellee.

HIGGINS, Justice.

Plaintiff instituted this action, praying for the nullity of the judgment rendered by this Court in favor of the defendant and against him in the prior litigation between them (Gumbel v. New Orleans Terminal Co., 186 La. 882, 173 So. 518), on the ground that it appears that the judgment is null and void on its face, because it is pure judicial legislation, contrary to the express provisions of the pertinent Codal article and, therefore, denied the plaintiff "due process of law" and "equal protection of the laws" guaranteed to him by the Fifth and Fourteenth Amendments of the Federal Constitution, U.S.C.A.Const. Amends. 5, 14; and for an injunction to restrain the execution of the judgment. In the alternative, he claimed damages under the reservation in the judgment, which he attacks.

Defendant filed an exception to the jurisdiction of the court ratione materiae, as to the main demand for the annullment of the final judgment of the Supreme Court and for an injunction to restrain its enforcement in a cause where that court had jurisdiction of the parties and the subject matter of the suit, merely upon plaintiff's allegations of errors of law in the opinion of the Court.

The plaintiff then filed a motion to discontinue his alternative demand for damages under the reservation of the judgment attacked, leaving only the main demand and request for an injunction before the Court.

The trial judge sustained the exception and dismissed the plaintiff's suit and he has appealed.

Plaintiff instituted a petitory action against the New Orleans Terminal Company to be declared the owner of Square No. 483 in the City of New Orleans. The defendant claimed the right of servitude for its spur or switch track on this land, pleading thirty years' prescription, and that as a public utility having the right of eminent domain, it had acquired a servitude for railroad purposes across the square of ground by actually constructing tracks on the property and maintaining and using them for many years in its operation as a public utility to the knowledge and with the consent and acquiescence of the plaintiff and his authors in title.

The latter defense was sustained by the trial court and affirmed by this Court on appeal, except for the amendment which placed the costs on the plaintiff as the party cast. 186 La. 882, 173 So. 518.

The basis of the claim of nullity is that a series of decisions of this Court since 1883 are judicial legislation establishing a method of creating a servitude not authorized by any Article of the Civil Code, and contrary to Article 766 of the Civil Code, which provides that:

"Continuous nonapparent servitudes, and discontinuous servitudes, whether apparent or not, can be established only by a title.

"Immemorial possession itself is not sufficient to acquire them.

"Immemorial possession is that of which no man living has seen the beginning, and the existence of which he has learned from his elders."

And, therefore, the Court, in applying the doctrine of those cases here, denied the plaintiff due process of law and the equal protection of the laws in violation of the provisions of the Constitution of the United States.

■ The decisions of this Court invoked by the defendant and applied by us to the plaintiff's case in the opinion, complain of covered legislation other than the Articles of the Civil Code on the subject of "Servitudes" found in Articles 646 through 822, both inclusive. They deal with legislation authorizing the acquisition of a servitude by a public utility, such as a railroad, in order to carry on its business, even against the consent of a land owner, through an expropriation proceeding and payment of compensation, under the right of eminent domain authorized by Civil Code, Articles 2626 and 2641; R.S. § 1479, as amended by Act 176 of 1928; Section 8015 et seq., Dart's Louisiana General Statutes. These decisions, assailed as judicial legislation, uniformly hold that when the corporation has the right of eminent domain, the land owner waives his right to insist that the creation and exercise of the servitude be preceded by an expropriation proceeding and estops himself from asserting that right and restricts himself to a claim for damages or compensation when he fails to object to the actual exercise of a servitude for a purpose of public utility on and across his property. The Court, in these decisions, has simply applied the legislation embodied in the Codal articles and statutory provisions concerning the right of eminent domain, thus interpreted and construed by the court as pertinent and controlling in such a situation, rather than the Codal articles on the subject of "Servitudes" here pleaded by the plaintiff. This is clearly a proper exercise of the judicial function recognized many years ago by the United States Supreme Court in the case of Marbury v. Madison, 1 Cranch 137, 177, 2 L.Ed. 60, where the Court said:

"It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each."

■ Even if it be conceded that this Court committed an error of law or judicially legislated in rendering its prior final decree that circumstance would not give the plaintiff the right to have the decree annulled. This point was settled in the case of Police Jury of Lafourche Parish v. Police Jury of Terrebonne Parish, 49 La. Ann. 1331, 22 So. 376, which involved the location of the boundary line between those two parishes that had been judicially determined in prior litigation between them. 34 La.Ann. 1230. The second suit

was filed by the same plaintiff against the same defendant to enforce the prior decree. The defense was that the final decree was an absolute nullity on the ground that the court legislated instead of determining the issues according to law. In deciding the case in favor of the plaintiff, the Court said (page 378):

"Defendant's attack of nullity upon the judgment pleaded as res judicata can avail nothing. The ground of nullity advanced can be held to be no other than error of decision upon the issues involved. Where this is the case, a decision upon those issues by a competent court operates as estoppel between the parties to the litigation. Heroman v. Louisiana Institute, 34 La.Ann. [805], 813."

Counsel for the plaintiff contends the above authority is not applicable, because the alleged judicial legislation in the instant case deprived him of his property without due process of law and denied him the equal protection of the law in violation of the prohibitions and guarantees of both the Federal and State Constitutions.

In the case of West v. Louisiana, 194 U.S. 258, 24 S.Ct. 650, 48 L.Ed. 965, this point was passed upon in a proceeding by a writ of error involving an affirmance by this Court of a conviction in a criminal case. State v. Kline et al., 109 La. 603, 33 So. 618. The defendants alleged that the jurisprudence of Louisiana with reference to the admissibility of depositions in evidence in a criminal case followed by this Court in affirming that conviction was directly at variance with the Louisiana constitutional and statutory provisions on the subject, and that such a decision violated the due process of law clause of the Constitution of the United States. In answering this contention, the United States Supreme Court said (page 651):

"Whether the state court erred in its construction of the state Constitution and statutes and the common law on the subject of reading depositions of witnesses is not a Federal question. We are bound by the construction which the state court gives to its own Constitution and statutes and to the law which may obtain in the state, under circumstances such as those existing herein."

In the case of Londoner v. City and County of Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103, the Court said (page 711):

"We see nothing in the sixth assignment of error. It is apparently based upon the proposition that, in construing a law of the state in a manner which the plaintiffs in error think was clearly erroneous, the supreme court of the state exercised legislative power, and thereby violated the 14th Amendment. We are puzzled to find any other answer to this proposition than to say that it is founded upon a misconception of the opinion of the court and of the effect of the 14th Amendment. The complaint in this assignment is not that the court gave a construction to the law which brought it into conflict with the Federal Constitution, but that, in construing the law so as to bring it into harmony with the Federal and state Constitutions, the court so far neglected its obvious meaning as to make the judgment an exercise of

legislative power. We know of nothing in the 14th Amendment which gives us authority to consider a question of this kind. * * *"

This doctrine was reaffirmed in the recent case of Schuylkill Trust Co. v. Commonwealth of Pennsylvania, 302 U.S. 506, 58 S.Ct. 295, 82 L.Ed. 392, wherein the court said (page 298):

"The contention that the State courts really have not construed the act but have themselves amended it, and that this is judicial legislation forbidden by the Constitution of Pennsylvania, is not open here. As the trial court pointed out, courts, in applying a statute, general and sweeping in its terms, may construe it as not intended to reach subjects which, by reason of constitutional prohibition, the Legislature is without power to touch. Whether the courts of the Commonwealth exceeded their powers under the State Constitution is not a federal question. We accept their construction of the act."

In line with this principle, the Supreme Court of the United States has repeatedly held that question of property rights involving issues of state law, is left to the State Courts for final determination, and that an alleged error in decision in such a case impairs no Federal right and presents no Federal question. See, also, Worcester Country Trust Co. v. Riley, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268; Standard Oil Co. v. Missouri, 224 U.S. 270, 32 S.Ct. 406, 56 L.Ed. 760, Ann.Cas.1913D, 936, and Tracy v. Ginzberg, 204 U.S. 170, 27 S.Ct. 461, 51 L.Ed. 755.

The Code of Practice of this State contains certain provisions as to the action for the nullity of a judgment, and we find nowhere therein any clause conferring, either expressly or by reasonable implication, upon the district court or this Court, jurisdiction over, or power to entertain an action for the nullity of a final judgment of this Court upon an allegation of error in the decision resulting from judicial legislation. Articles 605, 606 and 607 of the Code of Practice.

In the first proceeding between these parties the issue was squarely presented to the court as to what law was applicable to the case,—the Articles of the Civil Code with reference to servitudes, or the codal and statutory provisions of the law dealing with the right of eminent domain as interpreted by this Court? We concluded that the latter was apposite. Under Act 223 of 1908 defendant had fourteen days after the rendition of the judgment to apply for a rehearing. He did so and his application was denied and the judgment became final. It is difficult to understand on what theory plaintiff now seeks to have the final judgment of this Court reviewed by a court of inferior jurisdiction on an alleged question of error of law committed by the court in judicially legislating.

The plea of res adjudicata bars an action for the nullity of a final judgment predicated upon an allegation of an error therein. Campbell v. Gullo, 142 La. 1082, 78 So. 124, L.R.A.1916D, 251; Jeter v. Hewitt, 22 How. 352, 16 L.Ed. 345; Hero-

man v. Louisiana Institute, 34 La.Ann. 805; State ex rel. Denegre v. Judge, Man. Unrep.Cas. 388; Producers' Turpentine Co. v. Pringle, 127 La. 850, 54 So. 124, and Davis v. Packard, 8 Pet. 312, 323, 8 L.Ed. 957.

▇ In the first suit the plaintiff did not plead the alleged Federal question now presented. His excuse for failing to make this point is that he did not know upon what ground the Court would decide the case. The answer clearly indicated the law that the defendant was asking the court to apply and, therefore, the plaintiff was apprised of the situation. The trial court followed the list of authorities here attacked but still the plaintiff made no attempt to raise the issue of due process of law and equal protection of the law. He did not mention it in his application here for rehearing nor apply to the Supreme Court of the United States for a writ of certiorari. Plaintiff is seeking another hearing on a new line of argument after the judicial tribunals of his own selection have finally decided the case against him on all issues raised. Briefly, this is in effect a second application for a rehearing on a different ground. The law does not grant plaintiff such a right. Rule XII, Sec. 3, Sup.Ct.; Levert v. Berthelot, 127 La. 1004, 54 So. 329; Herndon v. Georgia, 295 U.S. 441, 55 S.Ct. 794, 79 L.Ed. 1530.

We are of the opinion that the exception to the jurisdiction of the court ratione materiae was properly sustained.

▇ There is some dispute between the plaintiff and the defendant as to whether or not plaintiff intended to completely dismiss the alternative demands for damages or merely divorce them from the main demand and injunctive issue, and, as this question was not raised in the lower court or passed upon by the trial judge, we shall refrain from expressing any opinion thereon.

For the reasons assigned it is ordered, adjudged and decreed that the judgment of the district court be amended so as to reserve the plaintiff's right to have passed upon the question of whether or not the plaintiff waived and abandoned his alternative demand for damages, and in all other respects, the judgment is affirmed at appellant's costs.

FOURNET, J., takes no part.