DORE, Judge.
The plaintiffs herein are the heirs of Albert Goins, and as such, they are the owners- of the Southwest Quarter (SW^4) *716 of the Southeast Quarter (SE%) of Section 11, Township One (1) South, Range Ten (10) West, situated in Vernon Parish, Louisiana, being part of the property obtained by patent from the United States by said Albert Goins of date June 18, 1901.
The defendant is a public utility corporation domiciled in the Parish of Beauregard and holding a franchise in the Parish of Vernon to erect its electric lines over all public highways. In connection with the erection of its electric lines, the said defendant, Beauregard Electric Cooperatives, Inc.,: obtained a right-of-way easement from one W.- P. Davis, which describes the property on which the easement is granted, as follows: “That Part of SEJ4 of SWJi, Sec. 11-1-S, 10 W, not owned by J. W. Stevison, also The SEJi of the NW% Sec. 14, TP 1S-R 10 W.”
It is shown that the said W. P. Davis purchased property from Martha Jane Midkiff and Florence O. Midkiff on October 25, 1909, described as: “East half of Southeast Quarter (SEJ4) of Southwest Quarter (SW%), Section 11, Township One (1), South Range 10 W., and the easement granted was supposed to apply to this property.
ít is shown by the evidence that the Southwest Quarter (SWJ4) of Southeast Quarter (SE%) belonging tó ' the plaintiffs and the property of W. P. Davis, are contiguous and that in accordance with a survey made, the Goins property extends beyond a public road on the East side of the Davis property, and yet a fence along this road had been built,since before the acquisition by Davis on the West side of the public road, and the correct line was not discovered until’ after the defendant, Electric Cooperatives, had constructed its electric line along the West side of the public highway and clearly on the Southwest Quarter (SWJ4) of Southeast Quarter (SEJ4) belonging to the plaintiffs.
The plaintiffs contend that the construction of this electric power line on this property was done without any authority whatsoever from them, and that as a result thereof, their property has been injured to the amount of $795.24, consisting of the following it'ems:
“1156 feet pine valued at $115.00 per thousand . $132.94
773 feet hardwood valued at $100.00 per thousand. 77.30
379 small hardwood trees valued $1.00 each.’.... 379.00
206 small pine trees valued at $1.00 per tree. 206.00
Total . $795.24"
They sue the Electric Company for this amount of damage and further demand that the Electric Company be ordered to remove and take off the poles and power lines placed on their property by said defendant.
The defense is in effect that the line was caused as a result of the easement obtained from W. P. Davis; that at that time, no survey showing the correct line between the Davis property and the Goins property was in existence, but that the accepted line had always been the fence along the West side of the public highway, which had been there for some forty years. The contention of the defendant is that Davis had occupied and operated that property since his acquisition in 1909, and that consequently, the property to the fence line belonged to -Davis by reason of actual physical and corporeal possession as the owner thereof for a period of thirty'years, citing Civil Code Articles 3499 and 3501.
After trial of the case, the trial judge for written reasons assigned, rendered judgment in favor of plaintiffs in the sum of $250, and decreeing further that the defendant remove three poles erected on plaintiff’s property described as Southwest Quarter (SWJ4) of Southeast Quarter (SEJ4), Section 11, Township One (1) South, Range 10 West, in Vernon Parish, Louisiana.
. The defendant has apppealed and again makes -the contention that, the property in question was owned by W. P. Davis by reason of adverse possession of more than thirty years, and that the easement from Davis to it gave it the privilege of con *717 structing the power line as was done. In the alternative, the defendant contends that should this Court decide that the lower Court was correct in overruling the plea of prescription, then and in that event, this Court should reconsider the quantum of damages for the reason that the trial judge did not state in his reasons for judgment, how he arrived at the sum of $250. The trial judge’s statement in that regard is as follows: “The next item is the quantum of damages to be allowed. The evidence was very conflicting. The Court thinks that taking everything in consideration, the sum of Two Hundred Fifty and no/100 ($250.00) Dollars, should adequately compensate plaintiffs, and this amount is hereby allowed as damages.”
The defendant brings out the fact that the only expert timber estimator who testified was one Don Stracener, who stated that in his investigation of the right-of-way on which the line was constructed, the only commercial timber destroyed that he found was four pine trees scaling a total of 218 feet, and one oak tree scaling 49 feet, and that trees not merchantable amounted to 26 white bay and gum bush. On the other hand, Goins, a welder by occupation, and Burrow, a plumber by occupation, testified that they made a thorough study of the damage done and that the commercial pine and hardwood cut amounted to 1,156 feet of pine, valued at $115 per thousand, and 773 feet of hardwood, valued at $100 per thousand, and that in addition thereto, 379 small hardwood trees valued at $1 each and 206 small pine trees valued at $1' per tree, were cut, which makes up’ the total claim of $795.24. On the valúe, the defendant contends correctly that since it was not acting in bad faith in cutting the timber from the right-of-way, then it is answerable to plaintiff’s stumpage value only and not the manufactured value set. forth in the petition. On the question of stumpage value, the best evidence we have in the record is the testimony of H. M. Bennett, who has been engaged in lumber manufacture and retail lumber store for about five years, who stated that at the time the right-of-way was opened, the cost of stumpage for select pine trees was from $12 to $25, but that usually they got stump-age for around $12 or $15. He sets the hardwood at $12 per thousand for stump-age. Using the average of the value of stumpage as set forth by Mr. Bennett on the pine, we would have the figure of $18.50 per thousand, and using the actual amount claimed by plaintiff, 1,156 feet of pine (See Exhibit P-6), which would give you the sum of $21.39 for the pine, and using the $12 figure on the hardwood given by the defense witness, Bennett, and the 1,037 feet claimed by plaintiff, you would have an additional amount of $9.28 for the hardwood, or a total of $30.67 for the actual scale lumber based on plaintiff’s own claim. It would be much less than this if you use the figures of Don Stracener to wit, 218 feet of pine and 49 feet of hardwood. In so far as the small trees of no commercial value are concerned, there is much evidence to the effect that of these, 175 had previously been destroyed by fire, and moreover, in addition to this great variance in the number involved as testified by neutral witness Don Stracener and plaintiffs Goins and- Burrow, there is no showing that these little trees or bushes had any value. We are therefore of the opinion that the most that plaintiff is entitled to as damages to the standing timber is, the sum of $30.67.
We have discussed the quantum of damages first for the' reason that we are of the opinion that the plea of prescription was properly overruled. The only evidence in support of the plea of prescription was the facft that for years prior to the acquisition by W. P. Davis, a fence' had been built along the West side of the highway and that Davis lived on the property even prior to his purchase in 1909, and continued to live thereon after he became owner, until about 1921,- and continued to farm part of the property subsequent thereto, and up to 1947. As for the particular strip involved, there is no showing that it was farmed, and apparently it had been overgrown with trees' and bushes for some ten years prior to the erection of the power line. It is also shown that the fence in question had not been kept up and there is no showing when and by whom it was *718 erected. It seems clear that neither Davis nor the Goins knew where their property-line was until after a survey was made by Mr. Oxford, contained in the record in connection with this power line. At that time, two of the plaintiffs attempted to secure a quitclaim from Mr. Davis to the strip involved so as to definitely establish the line between their property and the Davis property, and while Davis refused to sign such a quitclaim, it is not shown that he in any way claimed to be owner of the property. His attitude is that all he wants is the land which he purchased and that he wants the Goins to have whatever land belongs to them. We agree with the trial judge in his statement, as follows;
“The evidence on the plea of prescription was rather indefinite. The surveyor -employed by defendant denied that the southwest corner of the property in controversy was as shown on the map, although he never did ascertain just where said corner line was. The evidence used by the defendants was rather hazy, particularly as to the question of a fence allegedly erected and maintained by W. P. Davis, grantor of defendant.
“In the case of Texas Co. v. Theriot et al., 172 La. 662, 135 So. 17, our Supreme Court held that in order for defendants to establish a prescriptive title, they must show actual, continuous, uninterrupted, public, equivocable, possession for the -full prescriptive period of particular and definite property, to which they assert and claim ownership of property, citing Articles 3500 and 3503 of the revised Civil Code.
“In the case of Kilbourne v. Hosea, La.App., 19 So.2d 279, the First Circuit Court held that where some acts of ownership were exercised over property, but evidence was indefinite as to how long acts of ownership were exercised over the property, evidence was insufficient to prove necessary possession to have acquired property by prescription of thirty (30) years.
“Keeping the above cases in mind and an examination of the evidence as to prescription the Court is satisfied that the defendant has not established said prescriptive title in its grantor with that certainty required by law. The plea of prescription is accordingly overruled.”
With reference to plaintiffs’ demand, which demand was allowed by the District Judge, that is, that defendant be ordered to take off and remove from plaintiffs’ property all the poles, power lines and other property placed thereon by it, we are of the opinion that such demand should not be granted and the judgment so granting should be reversed for the following reasons :
Defendant is a corporation organized and existing under the laws of this State for the purpose of transmitting electricity for power, lighting, heating and other such purposes and under Act No. 110 of 1924, as amended by Act No. 156 of 1926, has the right to expropriate rights-of-ways for their transmission lines, which said right of expropriation shall be exercised in the same manner and by the same proceedings and under the same limitations now imposed by law on railroads and other quasi-public corporations.
Defendant on July 8, 1940, was granted a franchise by the Police Jury of Vernon Parish to erect, maintain and operate a line, or lines of poles, wires and structures, for the transmission of electric energy along and across all public highways in the Parish of Vernon lying South of Township One (1) South in the said parish, which franchise has been in effect from the date it was granted.
On May 8, 1947, W. P. Davis, being of the opinion that the public road then existing was the dividing line between his property and that of plaintiffs, and being further of the opinion that he was the owner of the property lying West of said public road, in absolute good faith, granted to defendant herein an easement to construct and operate an electric transmission line, and to cut and trim trees upon what he then thought to be his property. Defendant, in utter good faith, pursuant to said grant, then constructed its line of transmission for electric energy. It may be mentioned at this time that it was only after the completion of the said line of transmission and a survey of plaintiffs’ property *719 that it was ascertained that plaintiffs’ property extended beyond the public road and that defendants’ line of transmission was upon plaintiffs’ property.
In the case of Gumbel v. New Orleans Terminal Co., 190 La. 904, 183 So. 212, the Supreme Court of this State held that a public utility corporation which has the power of eminent domain may', by continual adverse possession and use of a portion of private property for right-of-way purposes, acquire the right to retain such right-of-way without resort to expropriation proceedings and the landowner will be relegated solely to a right of action for damages. See also Gumbel v. N. O. Terminal Co., 186 La. 882, 173 So. 518.
In the case of Roussel v. N. O. Ry. & Light Co., 152 La. 517, 93 So. 758, 759, it was held: “Where part of the property sued for in a petitory action is in the possession of an electric railway company having the power of eminent domain and expropriation, plaintiffs will be relegated to a right of action for damages so far as the portion of the property in the railway company’s actual possession and use is concerned.” See also St. Julien v. M. L. & T. R. Co., 35 La.Ann. 924; Lindner v. Y. & M. V. R. Co., 116 La. 262, 40 So. 967.
In the case of Barre v. Police Jury of the Parish of Avoyelles, 14 La.App. 155, 128 So. 694, a case wherein the Police Jury of the Parish of Avoyelles built a public road on plaintiff’s land without his knowledge and consent, the Court of Appeal, Second Circuit, held that plaintiff’s action was one for damages in the nature of a personal action for the value of lands the fee to which has been passed to the Police Jury by a quasi alienation.
In this case, regardless of the fact that plaintiffs have not acquiesced in the action of defendant, it cannot be contended that the property was not in the actual possession of defendant, or that it was not actually being used for the transmission of electric energy or that defendant does not possess the right of expropriation.
However, in the case, we have no evidence showing the actual extent of the property in possession of the defendant and its value in order to fix the amount of damages to which plaintiffs are entitled and the case shall be remanded to the lower Court for the introduction of evidence with regard thereto.
Exercising the discretion granted to us under Article 906 of the Code of Practice, it is ordered that the judgment appealed from is hereby annulled, reversed and set aside and accordingly, it is now ordered that the said cause is hereby remanded to the Fourteenth Judicial District Court for the Parish of Beauregard for further proceedings consistent with the views herein expressed. Plaintiffs are to bear the costs of this appeal, all other costs to await the final disposition of the case.
J. CLEVELAND FRUGE, J., sitting ad loc.