STATE OF CONNECTICUT *vs.* THE TRAVELERS INSURANCE COMPANY.

First Judicial District, Hartford, May Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

No provision of the Federal or State Constitution forbids our legislature from passing laws, the effect of which is to tax the shares of stock of Connecticut corporations owned by aliens at a higher rate than like shares owned by resident stockholders.

The question whether such alleged discriminatory legislation is void as against citizens of other States, under Art. 4, § 2, of the Constitution of the United States which provides that the citizens of each

State shall be entitled to all privileges and immunities of citizens in the several States, will not be considered, unless it appears from the record that the non-resident stockholders, in whose behalf such claim is made, are citizens of other States.

The declaration in the 14th amendment to the Federal Constitution, that no State shall deny to any person within its jurisdiction the equal protection of the laws, applies only to those persons who are physically present within the territorial jurisdiction of the State, the protection of whose laws they invoke.

A State has the right to debar aliens from holding stock in its corporations, or to admit them to that privilege upon such terms as it may prescribe; for the right of corporate association under the protection of an artificial personality, and of doing business on its credit, is a franchise granted by the State to such, and such only, as she may deem fit to be entrusted with its exercise.

Chapter 153, § 2, of the Public Acts of 1897, requiring certain corporations to pay to the State an annual tax of one and one half per cent upon the market value of their stock owned by non-residents, although in form a tax against the corporation, is in substance a tax against each of its non-resident stockholders.

The Act of 1897 increased the tax upon the stock held by non-residents from one to one and one half per cent of its value, but made no change in § 3917 of the General Statutes which gave the corporation paying the tax a lien upon the stock of each non-resident stockholder to the extent of one per cent of its value. *Held* that the defendant was not thereby deprived of its property without due process of law, inasmuch as General Statutes, § 1923, gave it a lien at all times upon all stock owned by any one of its stockholders, for all debts due to it from him. *Held*, also, that every non-resident stockholder who became such after the passage of the Act of 1897, or continued to hold his stock thereafter until the tax day in October, might fairly be deemed to have assented to any payment which the corporation could be legally compelled to make in his behalf, and so to have come under a contractual obligation to repay the moneys so advanced.

The sovereign power which creates a corporation can give its capital stock a *situs* within the State for purposes of taxation; and this is accomplished by a law taxing and imposing a lien upon the shares there.

The Act of 1897 applies to shares of "stock liable to taxation and not otherwise taxed." *Held* that a tax upon the property of the defendant which gave these shares their value, was not the same thing as a tax upon the shares of stock owned by non-residents.

General Statutes, § 3930, provides that the valuation affixed by the corporation to the stock of non-residents shall be revised by the state board of equalization, whose valuation "shall be final." *Held* that this did not preclude the courts, in a suit to recover the tax, from

correcting any errors in the mathematical process by which such valuation was reached.

[Argued May 5th—decided June 1st, 1898.]

ACTION to recover the balance of a tax upon the shares of non-resident stockholders of the defendant company, brought to the Superior Court in Hartford County and tried to the court, *Shumway, J.*, upon the defendant's demurrer to the complaint; the court overruled the demurrer and thereafter rendered judgment (*Ralph Wheeler, J.*,) for the plaintiff, and the defendant appealed for alleged errors in the rulings of the court. *No error.*

The complaint set forth as an exhibit the statement returned to the comptroller on October 1st, 1897, by the secretary of the defendant, of its non-resident stockholders and the number and market value of the shares held by each, as corrected by the board of equalization, which showed that there were 2,083 such shares, worth $220 a share; and alleged that the defendant had paid $1,468.51 of the tax due the State under § 2, Chap. 153 of the Public Acts of 1897, and no more.

The statement returned contained a list "of the stockholders of the Travelers Insurance Company, residing without this State," and gave the name of each, but not the place of residence of any.* It also set forth that the defendant had invested in real estate upon which it is assessed and pays a tax, the sum of $1,886,485.54, and added: "In order that taxation of all the shares of the same corporation may be approximately uniform and equal, and based upon an equal valuation of all its shares, and to avoid double taxation, it is claimed that the stockholders whose names are returned on this sheet should have the benefit of the same deduction made in favor of shareholders who reside in Con-

---

* The fact that the record failed to show that any of the non-resident stockholders were citizens of the United States or of any one of them, was called to the attention of counsel during the argument, and the attorney for the State, upon inquiry by the court, declined to waive this omission, or to concede that the rights of citizens of other States were in issue under the pleadings.

necticut." This deduction was then stated to be $183.45 from a market value of $230, leaving the "taxable value of stock per share, $46.55;" this result being ascertained by the proportion: $2,365,161.39 (the net surplus assets of the company on July 1, 1897) : $1,886,485.54 :: $230 : x = $183.45.

The demurrer to the complaint, which was overruled, set up that the Act of 1897 was void, under Art. IV of the United States Constitution and the XIVth amendment thereto, and as contrary to the principles of natural justice; that the tax was on personal property outside of the territory and jurisdiction of this State; and that it was a tax upon property of the defendant which was otherwise taxed.

The answer contained two defenses. The first set forth the statement returned to the comptroller, and alleged that the $1,468.51 which had been paid was the full amount payable under the provisions of the statute. The second defense was as follows: "The capital stock of the defendant company is represented by ten thousand shares, and, on the 1st day of October, 1897, 7,917 shares were owned by resident shareholders and 2,083 by non-resident shareholders. The defendant company, on the 1st day of October, 1897, had investments in real estate amounting to $1,886,485.54, to wit: $57,965.81 invested in real estate situated in this State, and $1,828,519.73 invested in real estate situated in other States, upon all of which real estate the defendant company is assessed and pays taxes. Said real estate constitutes the entire value of said capital stock in excess of $46.55 per share. Said board of equalization, in correcting the defendant's return and valuations, made no allowance, deduction, or diminution of the share value for or on account of said real estate, or any part thereof. The taxable value of said stock, as found by the board of equalization, is largely in excess of the taxable value of said stock owned by resident shareholders, and the amount of tax thereby required to be paid by said non-resident shareholders is larger than that required to be paid by the resident shareholders aforesaid."

The reasons of demurrer to the first defense were that it contained no denial of the complaint and nothing material

in avoidance; that the valuation of the shares of stock by the board of equalization was final; and that upon that basis the total taxes payable by the defendant were $6,873.90, thus leaving a large balance still due.

The reasons of demurrer to the second defense were substantially the same, and also that it was not the duty of the board of equalization to make any deduction for the value of the plaintiff's taxable real estate, whether in or out of Connecticut; that no tax is required by law to be paid by the defendant on account of its stock owned by Connecticut shareholders; that the board of equalization is not required to make and is not alleged to have made any finding as to the taxable value of the stock of the defendant; that the value for taxation of the stock of Connecticut shareholders is fixed by the assessors of the towns in which such shareholders reside, and it does not appear at what value such stock is so assessed, and is immaterial if it be assessed at less than the market value as found by the board of equalization; that the taxes of Connecticut shareholders depend on the votes of the municipalities in which they may respectively reside, and it does not appear to what rates of taxation they are thus subject, and would be immaterial, did it appear; and that no tax is by law required to be paid by non-resident shareholders.

This demurrer having been sustained, and no further plea or answer being filed, judgment was rendered for the State to recover $5,556.74 damages, that being the balance of the tax assessed ($6,873.90), after making due credit for the payment made.

*Henry C. Robinson* and *William R. Matson*, for the appellant (defendant).

The Act under which the tax is imposed is in violation of Art. IV, § 2, of the U. S. Constitution, and of the 14th amendment thereto, in that it is discriminating, unequal and unjust, and withholds from the valuation of shares of non-residents the exemptions given by statute to the valuation of the same stock belonging to residents. The non-resident

shareholders are entitled to protection under both of these constitutional provisions. The scope of the term "privileges and immunities," as used in Art. IV, § 2, of the Constitution, clearly intends that citizens of each State are to be placed upon the same footing with citizens of other States so far as the advantages resulting from citizenship in those States are concerned. *Paul* v. *Virginia*, 8 Wall. 168 ; *Corfield* v. *Coryell*, 4 Wash. C. C. 371 ; *Hooper* v. *California*, 155 U. S. 648 ; *Ward* v. *Maryland*, 12 Wall. 418 ; *Van Valkenburg* v. *Brown*, 43 Cal. 48 ; *Sprague* v. *Fletcher*, 69 Vt. 69 ; *Bliss's Petition*, 63 N. H. 135 ; *Wiley* v. *Parmer*, 13 Ala. 627 ; *State* v. *Ins. Com'rs*, 37 Fla. 564. The fourteenth amendment, while primarily intended for the benefit of the African race, has become a sort of new Magna Charta for all United States citizens. It cannot be doubted that the result of the 14th amendment is to limit the sovereign rights of States, wherever those sovereign rights conflict with the amendment. *Plessy* v. *Ferguson*, 163 U. S. 527 ; *San Mateo* v. *So. Pac. Ry.*, 13 Fed. Rep. 722; *Santa Clara* v. *So. Pac. Ry.*, 118 U. S. 394; *Fraser* v. *McConway, etc., Co.*, 82 Fed. Rep. 257 ; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Neal* v. *Delaware*, 103 id. 370 ; *Railroad, etc., Co.* v. *Equalizers*, 85 Fed. Rep. 302; *Barbier* v. *Connolly*, 113 U. S. 27 ; *Fire Asso.* v. *New York*, 119 id. 110. Another effect of the growth of these doctrines regarding the fourteenth amendment, is to read into the Constitution of this State a provision that taxation shall be uniform and equal. *Bell's Gap R. Co.* v. *Penn.*, 134 U. S. 239 ; *San Mateo* v. *So. Pac. R. Co.*, 13 Fed. Rep. 722, 734. The State of Connecticut, in classifying shareholders for purposes of taxation, is as strictly bound by the terms of the 14th amendment as in the case of discriminations. *Railroad Tax Cases*, 13 Fed. Rep. 722; *Gulf, etc., Co.* v. *Ellis*, 165 U. S. 150 ; *Railroad, etc., Co.* v. *Board*, 85 Fed. Rep. 307 ; *Railway Co.* v. *Guenther*, 19 id. 398. As a citizen of the United States, a non-resident stockholder would have absolute constitutional rights which the State could not override. *U. S.* v. *Cruikshank*, 92 U. S. 542; *Hagar* v. *Reclamation Dist.*, 111 U. S. 701 ; *People* v. *Weaver*, 100 id. 537. The State cannot im-

pose the burden of taxation on a few only and exempt others; it cannot tax one person at one rate and his neighbor at another and lower rate; nor designate one class of persons as special objects of taxation, without violating the constitutional provision as to equality. *Nat. Bank* v. *Kimball*, 103 U. S. 732; *Davenport* v. *Chicago, etc., Co.*, 38 Ia. 633; *Cooper* v. *Ash*, 76 Ill. 11; *Dubuque* v. *C., etc., Co.*, 47 Ia. 208; *Railroad, etc., Co.* v. *Board*, 82 Fed. Rep. 302. The law of 1897, by repealing the old law, has deprived the company, upon whom the statute imposes the duty of making the primary payment, of the lien which it had by the old law upon the dividend and stock of the non-resident shareholders whose property is really attempted to be taxed by the law. Such a law is offensive, not only to the United States constitutional provisions which we are now discussing, but to the principles of natural justice, which underlie our own and Federal Constitution as well. The attempt of the statute to impose a tax on the share of non-residents is an attempt to tax personalty outside of the jurisdiction of the State, and is void. *Kirtland* v. *Hotchkiss*, 42 Conn. 426; *State Tax on Foreign-held Bonds*, 15 Wall. 300–326; *People* v. *Campbell*, 138 N. Y. 543; *Murray* v. *Charleston*, 96 U. S. 432. Stock is personal property. It follows the person of its owner, has its *situs* at his domicil, and can only be taxed elsewhere when the law creating the corporation expressly gives the stock a different *situs*. *Tappan* v. *Merchants' Nat. Bank*, 19 Wall. 490; *Baltimore* v. *Hussey*, 67 Md. 112; *Watson* v. *Fairmount*, 38 W. Va. 183; *Bradley* v. *Bauden*, 36 Ohio St. 28; *Lee* v. *Dawson*, 8 Ohio Cir. Ct. 365; *Bank* v. *Kentucky*, 9 Wall. 353; *People* v. *Commissioners*, 23 N. Y. 224. The claim of the plaintiff demands a tax upon property of the defendant, which is "otherwise taxed" within the meaning of the statutes of the State. Double taxation is contrary to the policy of the State of Connecticut. *Lockwood* v. *Weston*, 61 Conn. 211; *Kirtland* v. *Hotchkiss*, 42 id. 426; *Security Co.* v. *Hartford*, 61 id. 89, 101; *Osborn* v. *New York & N. H. R. Co.*, 40 id. 491, 494; *Toll Bridge* v. *Osborn*, 35 id. 7, 20.

*Edward D. Robbins,* for the appellee (plaintiff).

The action of the board of equalization is final. *State* v. *N. Y., etc., R. Co.,* 60 Conn. 326, 337; *Coite* v. *Conn. Mut. Life Ins. Co.,* 36 id. 512, 535. The second ground of defendant's demurrer to the complaint involves the claim of law that a State cannot in any way tax stock in its own corporations held by non-residents. In support of this claim defendant's counsel rely on a class of cases following the leading case of *State Tax on Foreign-held Bonds,* 15 Wall. 300. In that case it was held that a *debt* was not property where the debtor resides, but rather where the creditor resides. But the difference between a *debt* of a domestic corporation and a share of its *stock* is radical. *In re Bronson,* 150 N. Y. 1; *People* v. *Campbell,* 138 id. 543. But technical considerations about the *situs* of property have very little weight in determining the *validity* of a tax law. *Adams Ex. Co.* v. *Ohio,* 166 U. S. 185; *Tappan* v. *Merchants' Nat. Bk.,* 19 Wall. 490; *National Bank* v. *Com.,* 9 id. 353; *Merchants, etc., Bank* v. *Pennsylvania,* 167 U. S. 461. The State which created this corporation may require it to pay any reasonable taxes, and has the right to exercise full discretion in formulating a rule by which the amount to be paid shall be ascertained. *People* v. *Equitable Trust Company,* 96 N. Y. 388, 395; *People* v. *Ins. Co.,* 92 id. 328; *McCullock* v. *Maryland,* 4 Wheat. 316; *Providence Bk.* v. *Billings,* 4 Pet. 514; *Coite* v. *Conn. Mut. Life Ins. Co.,* 36 Conn. 512, 527; *Coite* v. *Society for Savings,* 32 id. 173; *Provident Institution* v. *Massachusetts,* 6 Wall. 611; *Hamilton Co.* v. *Massachusetts,* ibid. 632; *State Tax on Railway Gross Receipts,* 15 id. 284; *Erie Railway Co.* v. *Pennsylvania,* 16 id. 492; *Delaware Railroad Tax,* 18 id. 206; *Philadelphia Contributionship* v. *Com.,* 98 Pa. St. 48; *In re McPherson,* 104 N. Y. 306, 316; *Att'y-General* v. *Bay State Mining Co.,* 99 Mass. 148; *Manufacturers Ins. Co.* v. *Lond,* ibid. 146; *Portland Bank* v. *Apthorp,* 12 id. 252. It is claimed that the statute imposing the tax is unconstitutional. It must be at once admitted that the system of taxation adopted by this State is not absolutely equal and uniform. But no system of taxation ever adopted

anywhere has attained ideal equality and uniformity. There are all sorts of difficulties encountered by lawmakers which render impracticable any near approach to ideal justice. In reality the shares of non-residents now bear a much lighter weight of taxation than they would practically bear, if the banks or insurance companies were taxed directly on their assessable property, like other corporations, and like individuals generally. Such being our system of taxation, it is submitted that it is not obnoxious to any constitutional prohibition. *Railroad Tax Cases*, 92 U. S. 575; *Adams Ex. Co.* v. *Ohio*, 165 U. S. 194; *Tappan* v. *Merchants' Nat. Bk.*, 19 Wall. 490; *Pacific Ex. Co.* v. *Seibert*, 142 U. S. 339; *Bell Gap R. Co.* v. *Penn.*, 134 id. 232; *Merchants', etc., Bk.* v. *Penn.*, 167 id. 461.

BALDWIN, J. Under the laws of this State, some of its corporations are subjected to taxes which are in lieu of any upon their shareholders, while for others a different rule is prescribed, and the shares are taxable against those who own them. General Statutes, § 3916, required the cashier or secretary of each corporation whose stock is liable to taxation and not otherwise taxed, to deliver, early in October, annually, to the comptroller, a sworn list of all its stockholders residing without this State on the first day of that month, and the number and market value of the shares held by each, and to pay to the State, on or before the twentieth day of the month, one per cent of such value. Section 3917 provides that all such companies " shall have a lien upon the stock of each non-resident stockholder, for the reimbursement of the sums so required to be paid by them, to the extent of one per cent. of the value of his stock as contained in said list."

Returns of a somewhat similar character as to the shares held by residents in Connecticut are to be made to the assessors of the town, city or borough to which they respectively belong. General Statutes, § 3837; Public Acts of 1897, p. 905; Chap. 205.

In 1897, § 3916 was so amended as to raise the percentage

of the valuation payable to the State from one to one and one half per cent. Public Acts of 1897, p. 857, Chap. 153. By General Statutes, § 3930, the State board of equalization, at a certain time in October, after due opportunity for a hearing of the party making any return under General Statutes, § 3916, is to correct the return and the valuation given therein, if found erroneous, and the valuation as thus corrected is to be " final, and the sums required shall be paid according to it."

Every Connecticut shareholder in each of these corporations is taxable upon his stock by the municipality in which he may reside, at such rates as it may fix from year to year, in view of its financial needs.

The defendant belongs to the class of corporations whose stock is liable to taxation, and the mode of such taxation is prescribed by the statutes to which reference has been made. The shares held by residents are taxable at such rates as the towns, cities and boroughs, to which they belong, may, from time to time, see fit to impose, upon a valuation set by the local assessors. The shares held by non-residents are taxable at the fixed rate of one and a half per cent upon their market value, as determined by the state board of equalization.

It is nowhere stated upon the record that any of the non-resident shareholders in the defendant company are citizens of the United States or of any one of them. Their names only are given, and while we may take judicial notice that these are those of persons belonging to an English speaking race, we cannot assume, as a cause for reversing the judgment rendered by the Superior Court, that they are Americans, any more than that they are Englishmen. The provision of the Constitution of the United States that the citizens of each State shall be entitled to all privileges and immunities of citizens in every other must, therefore, be laid out of the case.

Regarding the shareholders in question simply as so many persons, residing without this State, there can be no ground for claiming that they cannot be charged with the tax in con-

troversy, by reason of the declaration in the fourteenth amendment to the constitution, that no State shall deny to any person within its jurisdiction the equal protection of the laws. This inhibition is only for the benefit of persons who are physically present within the territorial jurisdiction of the State, the protection of whose laws they invoke. *Yick Wo* v. *Hopkins*, 118 U. S. 356, 369. The same is true of the Act of Congress, U. S. Rev. Stat., § 1977, passed under the authority of the fourteenth amendment, by which it is provided that " all persons within the jurisdiction of the United States shall have the same right in every State . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like . . . taxes, licenses, and exactions of every kind, and to no other." The rights thus secured are those only of persons who at the time are within the jurisdiction, that is, within the territory or under the flag, of the United States.

A State has a right to debar aliens (and as has been stated, it does not appear that any Americans are among the nonresident stockholders in the defendant company) from holding shares in her corporations, or to admit them to that privilege only on such terms as she may prescribe. The right of association under the protection of an artificial personality, and of doing business on its credit, whether it be obtained by a special charter or under a general incorporation law, is a franchise granted by the State to such, and such only, as she may deem fit to be entrusted with its exercise. Whatever may be the law as to citizens of other States, aliens can be excluded from membership in such bodies, unless they enter them on conditions which subject their investments to such burdens of taxation as the legislature may think it proper to impose. *Mager* v. *Grima*, 8 How. 490, 494.

The laws of Connecticut for more than thirty years have required the payment into her treasury, annually, of a fixed percentage of the market value of all stock in her insurance corporations held by non-residents. Public Acts of 1866, p. 19, Chap. 29. This rate, from 1866 (which was only three

years after the grant of its charter to the defendant) to 1897, was one per cent; and during all this period resident stockholders were taxed on their shares, in a very different manner. The statute now in question, by which the percentage was raised to one and a half per cent, was passed on May 13th, 1897, to take effect on July 1st. The tax was to fall on the shares which might be held by non-residents on October 1st. Ample opportunity was thus given to them to sell out their holdings in order to avoid this new burden; and those who remained can stand on no better footing than if they had bought their stock after the passage of the statute and with full knowledge of its terms.

The tax in question is, in form, one against the corporation. *State* v. *Royce*, 68 Conn. 311. In substance it is one against each of its non-resident stockholders, to be paid by it in their behalf. *Batterson* v. *Hartford*, 50 Conn. 558, 560. It is imposed only on corporations "whose stock is liable to taxation and not otherwise taxed." It is measured by the number of shares held by non-residents, and the value of each share. These shares do not belong to the corporation, and a tax on their value is virtually a tax against their owners. *Oliver* v. *Washington Mills*, 11 Allen, 268, 273. Where all the shares in a corporation are massed for purposes of assessment and taxation, this can be regarded as merely a convenient mode of ascertaining the value of its own property. *Nichols* v. *New Haven & Northampton Co.*, 42 Conn. 103, 120. No such construction can be given to a statute which fastens only upon such shares as are held by a particular class of persons. That now in question does no more than make the defendant the paymaster as respects the State. The non-resident shareholders owe the tax, as respects the corporation. The original law of 1866 was therefore careful to provide (§ 2) that every insurance company, paying the tax which it imposed, should "have a lien upon the stock of such non-resident stockholders, for the reimbursement of said sums so required to be paid." In General Statutes, § 3917, a similar lien is given "upon the stock of each non-resident stockholder" with the added words: "to the extent of one per

cent. of the value of his stock as contained in said list." The list to which reference is thus made is that to be returned under the preceding section, which as now amended makes the sum "required to be paid" one and a half per cent of the value of the stock.

It is strongly urged that to compel the defendant to discharge its shareholders' obligations, and then only give it a lien for two thirds of the moneys that may be thus advanced, is contrary to natural justice, and also in violation of the provisions of the fourteenth amendment to the Constitution of the United States, that no State shall deprive any person of property without due process of law. General Statutes, § 1923, strips this argument of force. That declares that every corporation, when it is not otherwise provided in its charter, "shall at all times have a lien upon all the stock owned by any person therein, for all debts due to it from him." A tax, in the strict signification of that term, may not constitute a debt to the sovereignty or municipality by which it is imposed. *Lane County* v. *Oregon*, 7 Wall. 71. But by General Statutes, § 3901, "all taxes, properly assessed, shall become a debt due from the person, persons, or corporation, against whom they are respectively assessed, to the city, town, district, or community in whose favor they are assessed, and may be in addition to the other remedies provided by law, recovered by any proper complaint or proceeding at law, in the name of the community in whose favor they are assessed." Those payable to the State are deemed to be collectible in a similar way. *State* v. *New York, N. H. & H. R. Co.*, 60 Conn. 326, 334. By becoming members of the defendant company after the passage of the Act of 1897, or by remaining members subsequent to that event, every nonresident stockholder may fairly be deemed to have assented to any payment which it might be legally compelled to make in his behalf under the provisions of that law, and so to have come under a contractual obligation for the reimbursement of the moneys so advanced. For the full performance of that obligation, the defendant had a lien under General Statutes, § 1923, though its lien under General Statutes, § 3917, would

be only a partial one. These two sections may well stand together; one giving a better remedy than the other, but both having similar purposes in view.

There is nothing in the objection urged in the demurrer to the complaint, that the law in question "attempts to impose a tax upon personal property outside the jurisdiction and beyond the territory of the State." Each non-resident shareholder participates in the enjoyment of a franchise granted by this State, and has an equitable interest in property which is protected by this State, and whose legal owner (the defendant) is one of its own citizens. The sovereign power which gave his shares a being could also give them a *situs* within its territory for purposes of taxation. *Tappan* v. *Merchants' National Bank,* 19 Wall. 490; *Lockwood* v. *Weston,* 61 Conn. 211, 218. To do this it is not necessary to declare in terms that they shall be deemed to be situated where the corporation belongs. It is enough to lay a tax upon them there, and impose a lien upon them there.

This demurrer also sets up that the tax in suit is one "upon property of the defendant which is otherwise taxed," and so unauthorized by the statute, which applies only to shares of "stock liable to taxation, and not otherwise taxed." This claim, plainly stated, is, not that the shares of stock held by non-residents are otherwise taxed by law, but that the property of the defendant, which gives them their value, is otherwise taxed, in whole or part. As the tax is one upon certain shares held by certain individuals, which are not otherwise taxed, it is immaterial whether the property of the defendant is otherwise taxed or not. Taxing that is not the same thing as taxing its capital stock in the hands of its shareholders.

The pith of the answer to the complaint is, that the board of equalization ought to have allowed the deduction claimed from the market value of the shares on account of the defendant's holdings of taxable real estate. Such a deduction is provided for by General Statutes, § 3836, in favor of every resident shareholder. His shares are to be set in his list in the town in which he resides at their market value, " but so

much of the capital of any such company as may be invested in real estate, on which it is assessed and pays a tax, shall be deducted from the market value of its stock, in its returns to the assessors."

If such a deduction ought to have been made by the State board of equalization, the defendant can properly avail itself, in this proceeding, of their omission of that duty. The only question is whether a certain amount, as to which there is no dispute, should have been subtracted from the market value of the stock. The provision of the statute (General Statutes, § 3930), that the "valuation of the . . . estate" made by the board "shall be final," does not preclude the courts, in a suit for the tax, from correcting any errors in the mathematical process by which such valuation was reached. *State* v. *New York, N. H. & H. R. Co.*, 60 Conn. 326, 336.

There is no statute which in terms required or authorized the board to allow the deduction claimed. The returns to the assessors referred to in General Statutes, § 3836, are those required in October, annually, from all corporations "whose stock is liable to taxation," to the assessors of each town in the State in which any of their stockholders may reside, stating their names and the market value of the shares during the preceding month. General Statutes, § 3837. The General Assembly had the right to give this privilege or rebate to our own citizens, and to withhold it from aliens. We do not intimate an opinion as to whether it would constitute an immunity, the benefit of which could be claimed by citizens of other States; for, as has been already stated, their rights are not put in issue by the pleadings. It is sufficient to support the judgment appealed from that, although the reduction by the board of equalization of the market value of the defendant's shares owned by non-residents, from $230 to $220, is slight, as compared with that which resident stockholders are entitled to claim from the local assessors, the favor thus shown to our own citizens is not forbidden by any provision in the Constitution of this State or of the United States, nor inconsistent with any of those maxims of jurisprudence which define the meaning of "legislative

power " as vested by our Constitution in the legislative department.    Every foreign stockholder consented to the inequality, when he elected to continue to participate in the benefits of the defendant's franchise, after the passage of the Act of 1897 ; and it does not appear that the interests of any but foreigners are involved.

The result which we have reached may practically throw upon the non-resident shareholders in the defendant company the weight of double taxation.   Its capital funds have been mainly invested in taxable real estate.   To a company differently situated in this respect, the payment of taxes on its real estate might hardly cause an appreciable diminution of the net earnings which would otherwise be applicable to dividends.   But taxes seldom bear equally upon all.   There is little in the Constitution of this State to limit the discretion of the legislature in imposing them, and nothing which militates against the validity of that now in question.

In view of the issues closed, upon which the judgment of the Superior Court was rendered, we are of opinion that there is no error.

In this opinion the other judges concurred.