LESTER E. SHIPPEE, BANK COMMISSIONER, *vs.*
RIVERSIDE TRUST COMPANY.

*Third Judicial District, New Haven, June Term, 1931.
MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, Js.

* Transferred from the First Judicial District.

Argued June 9th—decided July 29th, 1931.

*Barclay Robinson,* with whom was *William W. Fisher,* for the Hartford-Connecticut Trust Company, Temporary Receiver.

*Ernest L. Averill,* Deputy Attorney-General, with whom was *William H. Nelson,* Assistant Attorney-General, and, on the brief, *Warren B. Burrows,* Attorney-General, and *John H. King,* Assistant Attorney-General, for the plaintiff and the State Treasurer.

HINMAN, J. On or before October 15th, 1930, pursuant to § 1272 of the General Statutes, the Riverside Trust Company filed in the office of the state tax commissioner a statement under oath showing the number of shares of its capital stock and the fair market value thereof on the first day of October, 1930, and on De-

cember 31st, 1930, the state board of equalization, pursuant to § 1112 of the General Statutes, determined the fair market value of the shares of stock and computed the tax payable thereon at $11,760.63. The tax so determined and assessed was due and payable on or before February 28th, 1931.

On December 23d, 1930, Lester E. Shippee, state bank commissioner, pursuant to § 3870 of the General Statutes, issued an order restraining the Riverside Trust Company from paying out funds or receiving deposits, and on January 6th, 1931, upon the application of the bank commissioner, the Hartford-Connecticut Trust Company was appointed temporary receiver of the corporation by the Superior Court.

The company maintained a savings department and pursuant to §§ 1285 and 1287 of the General Statutes the temporary receiver delivered to the state tax commissioner a sworn statement showing the amount of all the deposits, exclusive of surplus, in the savings department on January 1st, 1931, and the amount of the tax due and payable thereon to be $2584.64. On February 2d, 1931, the board of equalization examined and found correct this return, and no application in the nature of an appeal from this action has been taken pursuant to § 1124 of the General Statutes. One half of this tax, under § 1285, was payable on or before February 20th, 1931, and one half on or before July 20th, 1931.

The state treasurer has filed with the temporary receiver a claim for the payment of the taxes above mentioned, claiming that the State is entitled to a preference in the payment thereof over the claims of depositors, and the questions, pertaining thereto, upon which advice is desired are as follows: (1) Is the claim of the State for tax on the shares of the capital stock entitled to a preference over the claims of depositors?

(2) If the answer to question 1 is "No," then is the claim of the State to be included with "all other liabilities" in class 5 of § 3935 of the General Statutes? (3) Is the claim of the State for tax on savings deposits entitled to a preference over the claims of depositors, either of the savings department or of the commercial department? (4) If entitled to any preference should the tax on savings deposits be paid out of the funds of the savings department? (5) If the answer to question 3 is "No," then is the claim to be included with "all other liabilities" in class 5 of said § 3935? (6) Is the Riverside Trust Company liable to the State for a tax under the provisions of §§ 1285 and 1287 of the General Statutes, upon its savings department deposits as of January 1st, 1931?

So much of the sections of the statutes above mentioned as is material to the inquiry is quoted in a footnote.

---

"Sec. 1272. BANKS AND TRUST COMPANIES TO REPORT AND PAY TAXES ON STOCK: The secretary, treasurer or cashier of each bank or national banking association, and of each trust company, whose stock is not exempt from taxation, shall, annually, on or before October fifteenth, file in the office of the tax commissioner a statement under oath, showing the number of shares of its capital stock and the fair market value thereof on the first day of October, the name and residence of each stockholder and the number of shares owned by each on said last named date; and, on or before the last day of the following February, each of the corporations aforesaid shall pay to the state treasurer a tax of one per centum on the fair market value of each share of its stock, as such value may be determined under the provisions of section 1112, less the amount of taxes paid by such corporation upon real estate assessed in its name in the state during the year ended on the thirtieth day of September next prior thereto, which real estate shall be assessed and taxed in the town or other taxing district within which it is located. . . ."

"Sec. 1275. STATE TO REMIT TAXES TO CITIES OR TOWNS. CITIES OR TOWNS TO REMIT TO TAXING DISTRICTS. NONRESIDENT STOCK. On or before the fifteenth day of April in each year, the state treasurer shall remit to the treasurer of each town in the state, or, in towns where the town and city governments are consolidated, to the city treasurer,

The pith of the questions which relate to the tax on shares of the capital stock (1 and 2) is whether the

the amount of the tax received under sections 1272 and 1273 upon such shares of the capital stock of any of the aforesaid corporations as were, on the first day of October of the preceding year, owned by persons who resided or corporations which were located in such town, or, if forming part of the estate of a deceased person, whether held in trust or otherwise, to the treasurer of the town or city wherein the decedent resided at the time of his death. . . ."

"Sec. 1285. RETURNS BY, AND TAX ON, SAVINGS BANKS. The treasurer of each savings bank shall, on or before the twentieth day of January, annually, deliver to the tax commissioner a sworn statement of the amount of all its deposits, exclusive of surplus, on the first day of said month; also of the amount invested in any bonds issued by this state, or by any town or city in the state, in aid of the construction of any railroad, and which, by the statutes of this state, are exempt from taxation; also of the amount exempted from taxation by the provisions of section 1286; also of the assessed value of all real estate assessed against such savings bank in the year next but one preceding the first day of said January, together with a specific list of the same, and of the amount of taxes paid or payable thereon in the year preceding the first day of said January; and each savings bank shall pay to the state, one-half on or before the twentieth day of February and one-half on or before the twentieth day of July in each year, a tax on its corporate franchise computed as follows: From the amount of its deposits, exclusive of surplus, shall be deducted fifty thousand dollars, and also the amount invested in any bonds issued by this state, or by any town or city in this state, in aid of the construction of any railroad, and which, by the statutes of this state, are exempt from taxation, and also the amount exempted from taxation by the provisions of section 1286; and the annual tax shall equal one-fourth of one per centum of the amount of its deposits remaining, less the amount of taxes paid or payable by it upon its real estate in Connecticut during the year prior to the first day of January. Said state tax shall be in lieu of all other taxes upon savings banks, their deposits and surplus, except the aforesaid taxation upon their real estate.

"Sec. 1287. TAX ON SAVINGS DEPOSITS IN BANKS AND TRUST COMPANIES. All banks and trust companies maintaining a savings department, or soliciting or receiving deposits as savings, shall pay to the state on all savings deposits held by them the same tax which is required to be paid by savings banks by section 1285, less the amount of taxes paid by it upon real estate assessed against it, which real estate is held as an asset of its savings department, and such savings deposits shall be exempt from all other taxation."

"Sec. 3935. MARSHALING OF CLAIMS. The avails of the property

nature of the tax and the statutory provisions for its payment are such that it should (a) be accorded priority over general claims against the corporation, (b) share with other general claims or (c) be payable only from the surplus, if any, distributable to stockholders. Judicial construction of the statute imposing this tax leaves no doubt as to its nature, or of the general principles governing its administration, including the duty of the corporation, ordinarily, to pay to the State the amount of the tax.

The statute "provides for the collection of the tax from the corporation by the treasurer of the State, who is required to pay over to the towns in which resident stockholders reside the taxes derived from such stockholders' shares. The tax is . . . imposed upon the shares of stock. . . . The same tax is collected upon resident and nonresident stockholders' shares . . . but [the statute] requires, as it may do, the corporation to pay it in behalf of the shareholder. A 'tax assessed to shareholders may be required by law to be paid in the first instance by the corporations themselves as the debt and in behalf of the shareholder, leaving to the corporation the right to reimbursement for the tax paid from the shareholders, either under some express statutory authority for their recovery or under the general principle of law that one who pays the debt of another at his request can recover the amount from him.' *Home Savings Bank* v. *Des Moines*, 205 U. S. 503, 518, 27 Sup. Ct. Rep. 571. The present statute [now § 1272 of the General

of any bank or trust company in the hands of a receiver or receivers shall be appropriated ratably to the payment of: (1) The charges and expenses of settling its affairs; (2) the circulating notes, if any; (3) all deposits; (4) all sums which have been subscribed and paid in for its stock by the state or the school fund; (5) all other liabilities; and the surplus shall be distributed among the stockholders,"

Statutes], like the former one [§§ 3836, 3837, General Statutes, 1888; *State* v. *Travelers Ins. Co.,* 70 Conn. 590, 40 Atl. 465; *Barrett's Appeal,* 73 Conn. 288, 47 Atl. 243], imposes the tax upon the shares of stock, which belong to the stockholder, and not upon the capital or property of the corporation. The purpose is apparently to accomplish the same result as . . . by the former statute, only so modifying it as to make the taxation uniform as between resident and non-resident shareholders, also between the resident shareholders in the different towns and taxing districts, for under the earlier law a different value might be placed upon the shares in the different towns, and the tax rate in the different towns was not uniform. . . . As a convenient means of accomplishing this result the corporation is made paymaster for the shareholders, the amount of the tax, less the deduction, is fixed by the State, and the tax is collected by the State and paid over to the towns where the shareholders reside." *Roberts* v. *Automobile Ins. Co.,* 89 Conn. 181, 188, 189, 93 Atl. 243. The tax is upon the property of the shareholder—not upon the property of the corporation and upon or levied against the corporation as such. The duty and obligation of the corporation is merely as "paymaster for the shareholders," to pay the tax in the first instance, "as the debt and in behalf of the shareholder." *Roberts* v. *Automobile Ins. Co., supra.*

This reservation requires us to determine, further, the effect of the intervention of insolvency of the corporation and the appointment of a receiver. Since this tax is not properly to be regarded as against the corporation in the usual and accepted sense, it is apparent that, though such taxes be entitled to priority in receivership the corporation's obligation respecting the tax now under consideration could be regarded, at most, only as a debt coming under subdivision (5) of

§ 3935 of the General Statutes, which is quoted in a footnote. However, careful consideration and the available precedents indicate that this claim of the State is not entitled to participate with those of the general creditors of the corporation but is payable only from assets, if any, ultimately remaining and distributable to the shareholders.

Statutes of other States, similar in purpose and nature, which have been involved in cases pertaining to the collectibility of the tax from corporations in receivership, and in which recovery either as a preferred or a common claim was denied, disclose differences in detail but in no respect which we regard as materially affecting the reasoning or result in the present instance. Some such statutes provide for assessment against the individual stockholders at the place where the bank is located but for payment by the bank with a lien upon the shares of each stockholder for his proportion of the tax so paid. Others require assessment in the name of the bank, with a similar lien. *Ward County* v. *Baird,* 55 N. D. 670, 215 N. W. 163; *Andrew* v. *Munn,* 205 Iowa, 723, 218 N. W. 526; *Wilcoxen* v. *Munn,* 206 Iowa, 1194, 221 N. W. 823; *State* v. *Barnesville National Bank,* 134 Minn. 315, 159 N. W. 754; *Farmers & Traders National Bank* v. *Hoffmann,* 93 Iowa, 119, 61 N. W. 418; *Gourd* v. *Guaranty National Bank,* 90 Okl. 298, 217 Pac. 358; *City of Boston* v. *Beal* (C. C.) 51 Fed. 306 (affirmed, C. C. A. 55 Fed. 26); *Stapylton* v. *Thaggard* (C. C. A.) 91 Fed. 93.

*City of Boston* v. *Beal, supra,* was an action against a receiver of a national bank to recover taxes assessed under a statute (Chap. 13, Mass., §§ 8-10) providing that shares of stock in banks be assessed to the owners thereof in the cities and towns where the banks are located and that every such bank shall pay the amount

of the tax so assessed, and shall have a lien therefor on all the shares and all the rights and property of the shareholders in the corporate property. It was held that recovery could not be had from the receiver on the ground that, as it appeared that the property representing the capital stock and the shares had been swept away, if the tax was paid by the bank it could have no effective lien upon the shares for repayment and therefore the tax, if paid, would amount to one upon the assets of the bank, belonging to the creditors (instead of on the shares) and thereby violate the rule that a State cannot tax the capital of a national bank. Also (p. 308) "If the action against the bank under the statute makes the bank the agent of the State to collect the tax . . . it is too late to bring suit after the funds are no longer in existence from which the bank can reimburse itself." In *Stapylton* v. *Thaggard, supra,* involving a tax under a Florida statute substantially the same as that of Massachusetts, it was said (p. 95) that if the assessment be taken and held to be one upon the shares of the bank and against the shareholders "the case made by the bill, showing the insolvency of the bank and the appointment of a receiver, is one which releases the receiver and any assets in his hands from liability to pay the tax. See *Rosenblatt* v. *Johnston,* 104 U. S. 462. As we construe the cases, from *First National Bank* v. *Commonwealth,* 9 Wall. [76 U. S.] 353, to *First National Bank* v. *Chehalis County,* 166 U. S. 440, 17 Sup. Ct. 629, the bank is made to pay the taxes assessed by the State against its shareholders, when the State statutes lay such duty upon the bank, upon the theory that the shares are valuable, and that the bank has assets in its hands belonging to the shareholders from which it can recoup. Where a bank is insolvent, and has passed into the hands of a receiver, the shares are

generally worse than worthless; and the receiver has no assets belonging to the shareholders which can be applied to the payment of taxes assessed on the shares. In such case, we are of opinion that the tax assessed against the shares of the bank cannot be collected from the receiver, or from assets in his hands." See also 3 Cooley on Taxation (4th Ed.) § 1269.

We are unable to agree that these decisions involving national banks are not applicable. While it is true that a construction that the tax is upon the stockholder's interest represented by his shares, as distinguished from a tax on property of the corporation, is essential to the validity of the tax as applied to national banks, when the tax has been determined to be of the former class the further considerations which were determinative in the cases referred to are appropriate to state banks and trust companies as well as to national banks. Moreover, our statute, § 1272, includes and covers all three classes of banks and, especially in the absence of any indication to the contrary, we are required to regard it as equally applicable to all. Although our statute lacks the express provision for a lien upon dividends or stock or right of recovery or both appearing in some, and the right to obtain reimbursement is dependent only on the general principle governing recovery for the payment of the debt of another (*Roberts* v. *Automobile Ins. Co.*, *supra*, p. 189) we cannot see that the situation is so changed thereby, or in any other material respect, from that obtaining in the cases above cited as to warrant us in construing the statute as contemplating that the receiver shall either pay the tax at the expense of creditors of the corporation itself, or (lacking assets, remaining after payment of such creditors, distributable to the stockholders, on final settlement) be relegated to the doubtful expedient of seeking recovery,

in individual actions, from the several stockholders. It is consistent with the nature of the tax and the situation presented that the claim of the State upon this tax be subordinated to the classes of claims enumerated in § 3935, and be paid by the receiver only if there remains, after payment of these claims, a surplus distributable to the stockholders on account of the shares on which the tax is predicated.

The problem next in logical, although not in numerical, order (Question 6) concerns the liability of the defendant for the tax on its corporate franchise, based and computed on its savings deposits, under §§ 1285 and 1287 of the General Statutes and assessed when and as set forth in the stipulated facts. The claim of the defendant appears to be that by the order of the bank commissioner, issued December 23d, 1930, under authority of § 3870 of the General Statutes, restraining the defendant from paying out funds or receiving deposits, the State withdrew the privileges conferred by the corporate franchise before the assessment date (January 1st, 1931) and that, in consequence, the corporation was relieved from liability for tax on account of the franchise. For present purposes we may accept the theory of the defendant that the tax now being considered is one upon the value of the franchise on January 1st, measured by the amount of its savings deposits on that date. *Commonwealth* v. *People's Five Cent Savings Bank,* 87 Mass. (5 Allen) 428. "That amount would disclose its capacity and the value of the privilege and benefit it enjoyed under its charter on the day when the tax was assessed." *Commonwealth* v. *Lancaster Savings Bank* (1878) 123 Mass. 493, 496. In that case, in December, 1875, the defendant bank was placed in the hands of receivers, and perpetually prohibited from transacting business, and the receivers proceeded at once to wind

up its affairs. A statute imposed a tax upon the franchise of savings banks of three fourths of one per cent upon their deposits, to be assessed one half on the average amount of their deposits for the six months preceding the first day of May and the other half in like manner for the six months ending November 1st. It was held that no such tax as of May 1st, 1876, could be collected, as on that date, because of the proceedings above stated, the franchise, as a privilege to transact business, had ceased to exist.

That the present case is definitely distinguishable is demonstrated by analogy with *Commonwealth* v. *Barnstable Savings Bank* (1879) 126 Mass. 526, an action for recovery of a tax assessed on May 1st, 1878, under the same statute as in the *Lancaster Bank* case. In September, 1877, at the instance of the state commissioners of savings banks, the officers of the bank were enjoined from receiving deposits or paying depositors and their powers were somewhat limited in other respects, and this condition still obtained on May 1st, 1878, when the tax accrued. It was pointed out, however, that under the injunction the bank was enabled to continue its business under its own officers. "It was not absolutely deprived of the right to exercise its franchise, or of the profit and benefit to be derived therefrom," although restricted in its power to make investments, add to its liabilities or diminish its assets, and could sell real estate only with the approval of the bank commissioners, and this state of facts was held (p. 530) to be essentially different from that in the *Lancaster Bank* case, in which "the bank had practically ceased to exist, and could no longer enjoy the privilege of transacting any business." The defendant bank was held liable to pay the tax and "cannot be relieved from this obligation because afterwards the court found it necessary to issue a perma-

nent injunction and appoint receivers to wind up its affairs." (p. 531.)

The restrictions to which the present defendant was subject on January 1st, 1931, were less extensive and sweeping than in the *Barnstable Bank* case; they consisted of a "temporary order," for which, only, § 3870 of the General Statutes, under which it was issued, provides, restraining the company from "paying out funds or receiving deposits." Otherwise its rights to exercise its franchise remained unaffected on January 1st and until the inception of the receivership on January 6th. Therefore the reasoning and result in the *Barnstable Bank* case applies, rather than *Commonwealth* v. *Lancaster Savings Bank, supra,* and the other cases, relied on by the defendant, presenting a similar situation. *Greenfield Savings Bank* v. *Commonwealth,* 211 Mass. 207, 97 N. E. 927; *State* v. *Bradford Savings Bank & Trust Co.,* 71 Vt. 234, 44 Atl. 349. The defendant is liable for the tax assessed under §§ 1285 and 1287.

The remaining questions (3, 4 and 5) relating to the priority to be accorded the claim for this tax do not require extended discussion. They are determined by the holding in *Lippitt* v. *Thames Loan & Trust Co.,* 88 Conn. 185, 189, 190, 193, 90 Atl. 369, that lawful taxes are on a parity, as to order of priority in payment, with charges and expenses of settling the receivership affairs. This result is in harmony with the statutory order of payment in probate settlement of insolvent estates (§ 4870). *Lamkin* v. *Baldwin & Lamkin Mfg. Co.,* 72 Conn. 57, 63, 64, 43 Atl. 593; *Ward* v. *Connecticut Pipe Mfg. Co.,* 71 Conn. 345, 355, 41 Atl. 1057; 1 Clark on Receivers (2d Ed.) §§ 669, 670.

We answer questions 1 and 2, No, the claim is payable only out of surplus distributable to stockholders; question 6, Yes; questions 3, 4 and 5, the claim is en-

titled to preference over claims of depositors in both the savings and commercial departments.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.