SCHUYLKILL TRUST CO. *v.* PENNSYLVANIA.

No. 447.   Argued December 6, 1937.—Decided January 3, 1938.

*Mr. John Robert Jones* for appellant.

*Mr. Manuel Kraus,* with whom *Mr. Charles J. Margiotti,* Attorney General of Pennsylvania, was on the brief, for appellee.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

In *Schuylkill Trust Co.* v. *Pennsylvania,* 296 U. S. 113, we held an act of Pennsylvania [1] invalid as construed and applied in the calculation of the amount of the tax thereby imposed. The statute requires every trust company chartered under the general corporation law to report annually to the Department of Revenue the number of outstanding shares and their actual value at the close of the preceding calendar year. The department is to assess the shares for taxation at five mills upon the dollar. The taxable value of each share is to be ascertained by adding together so much of the amount of paid-in capital stock, surplus, and undivided profits as is not invested in shares of corporations liable to pay or exempted from payment of the Pennsylvania capital stock tax, or relieved from the payment of a tax on shares, and dividing this amount by the number of shares. The company must pay the tax from its general fund within sixty days after assessment, or collect it from the shareholders and pay it over. Provision is made for posting notice of the assessment in the company's office so that shareholders shall be advised of the amount of the assessment and for a hearing of any shareholder who objects to the valuation of the shares.[2]

Securities owned by a trust company may have been purchased out of deposits or from the capital, surplus, and undivided profits. Since securities the value of which is by the act deductible from the tax base may have been purchased out of either of the two funds, it is open to the company to prove that they or any of them were

[1] Act of June 13, 1907, P. L. 640, as amended by the Acts of July 11, 1923, P. L. 1071, May 7, 1927, P. L. 853, and April 25, 1929, P. L. 673.

[2] Act of April 9, 1929, § 807, P. L. 393.

purchased out of capital, surplus, or undivided profits. Upon such a showing these securities are fully exempt from tax. Where the company has not made this showing the practice in assessing the tax has been to grant a so-called proportionate deduction in respect of such exempt securities.[3] This is accomplished by the use of the following formula: A fraction, the numerator of which is the capital, surplus, and undivided profits at book value less the book value of those investments, if any, for which a full deduction has been made, and the denominator, the book value of the permanent investments, less the book value of those investments, if any, for which a full deduction has been made, is applied to the book value of the securities which are to be apportioned, after adjustment for appreciation or depreciation of those securities, and the resulting sum is deducted from the capital, surplus, and undivided profits. In this manner a portion of the value of each exempted security reflected in the capital, surplus, and profits is deducted before the value per share is determined by dividing the capital surplus and profits so diminished by the number of shares outstanding.

Upon the former appeal it was shown that whereas a proportionate deduction was allowed for shares of Pennsylvania corporations previously taxed, or shares of such corporations exempt from tax, no deduction was accorded in respect of shares of a national bank and bonds of the federal government and its instrumentalities owned by the company. The appellant's position was that the act, though it purported to tax the shares, in fact taxed the net assets of the company which included shares of stock of a national bank and securities of the federal government and its instrumentalities owned by the

---

[3] See *Commonwealth* v. *Hazelwood Savings & Trust Co.*, 271 Pa. 375; 114 Atl. 368.

appellant.  An alternative claim was that, if the levy
was upon the shares as such, the application of the act
worked a discrimination against national bank shares and
other federal securities by excluding from the base a pro-
portionate part of the value of shares of certain Pennsyl-
vania corporations while leaving in the base national
bank shares and federal securities; and that, if the tax
was upon the shares it was bad, as the Commonwealth
was without power to tax the shares of nonresident stock-
holders.  The Commonwealth insisted the tax was upon
the shares and not upon assets, that the application of
the statute involved no discrimination against federal
securities and that the State had jurisdiction to tax the
shares of nonresident shareholders.

We found it unnecessary to determine whether the tax
was upon shares or assets.  Amongst the assets were shares
of national bank stock which had been taxed to the com-
pany as owner, pursuant to R. S. 5219 as amended.[4]
These we held must be excluded from the base upon which
the tax was calculated.  We held further that the exclu-
sion from the base of a proportion of the value of tax
exempt shares of Pennsylvania corporations, and the re-
fusal of like treatment of federal securities, operated as an
unconstitutional discrimination against the latter.  We
reversed the judgment of the Supreme Court of Pennsyl-
vania and remanded the cause for further proceedings not
inconsistent with our opinion.

After our mandate went down the Commonwealth
moved the trial court to redetermine the tax by disregard-
ing the amendatory statute involved in our decision and
reverting to the basic act of June 13, 1907,[5] which was
claimed not to be affected by the infirmity of the amenda-
tory act.  The appellant insisted that as we had set aside

---

[4] U. S. C. Title 12, § 548.

[5] *Supra*, Note 1.

the judgment and held the amendatory act of April 25, 1929,[6] invalid as construed and applied, the only action open to the trial court was the entry of a judgment for the appellant. The court refused to follow either of the suggested courses, holding that the legislature, by the act of 1929, intended to exercise only such power as it lawfully possessed and did not attempt to impose a tax upon securities exempted by federal law. It found that the purpose of the statute could be accomplished by eliminating the national bank shares from the tax base and by treating the other federal securities in the same manner as tax exempt stock of state corporations. It accordingly recalculated the tax. The appellant took the case to the Supreme Court of the Commonwealth which affirmed the judgment.[7]

By appropriate exceptions and assignments of error the appellant challenges the new judgment upon these grounds: that the courts below have disregarded the mandate of this court and have exceeded their powers in re-assessing the tax; that the tax is one upon assets and not upon shares, and federal securities are left in the tax base as to at least a portion of their value; that, if the tax is upon the shares rather than upon the assets, there is still a discrimination against federal securities because the stockholders of appellant and other similar corporations are wholly exempted from any tax calculated upon the value of the shares of national banks whereas at least a portion of the value of other federal securities still remains in the tax base; and that, in any event, the impost is bad so far as it is laid upon the shares of nonresident shareholders. The Commonwealth argues that the tax is upon the shares as such and not upon assets; that in assessing it no discrimination is practiced

---

[6] *Supra*, Note 1.
[7] 327 Pa. 127; 193 Atl. 638.

against federal securities and in favor of the exempted stock of Pennsylvania corporations and that, if the tax is otherwise valid, the fact that it is laid upon all shareholders, including nonresidents, does not void it as respects the latter.

*First.* When the case was previously heard we held the, statute invalid as construed and applied and remanded the cause for further proceedings not inconsistent with our opinion. It is clear that the state courts were not precluded from construing the statute so as to eliminate the unconstitutional features. It follows that the appellant was not entitled, as a matter of right, to a general judgment in its favor exempting it from all tax.

*Second.* The contention that the state courts really have not construed the act but have themselves amended it, and that this is judicial legislation forbidden by the constitution of Pennsylvania, is not open here. As the trial court pointed out, courts, in applying a statute, general and sweeping in its terms, may construe it as not intended to reach subjects which, by reason of constitutional prohibition, the legislature is without power to touch. Whether the courts of the Commonwealth exceeded their powers under the state constitution is not a federal question. We accept their construction of the act.

*Third.* As the case is now presented, we find it necessary to determine whether the tax is upon the shares as such or upon the capital, surplus, and profits of the company. The statute on its face lays the tax upon the property of the stockholder, represented by the shares he owns. The state courts, and the local federal court, have held the imposition a tax upon the shares.[8] The history of legisla-

---

[8] *Commonwealth* v. *Schuylkill Trust Co.*, 315 Pa. 429; 173 Atl. 309; *Commonwealth* v. *Mortgage Trust Co.*, 227 Pa. 163, 174; 76 Atl. 5; *Commonwealth* v. *Union Trust Co.*, 237 Pa. 353, 355; 85 Atl. 461; *Northern Trust Co.* v. *McCoach*, 215 Fed. 991.

tion respecting taxation of banks and trust companies in Pennsylvania leads to the same conclusion.[9] We are of opinion that the tax is one upon the shares as such and not upon the assets of the company.

*Fourth.* The State need not have made any exemption or concession in taxing the property in the shares on account of value therein reflected from the company's ownership of obligations of the government or its instrumentalities

---

[9] As early as 1867 [Act of April 12, 1867, P. L. 74] Pennsylvania imposed a tax on the shares of national bank stock in the hands of the holders. See also Act of April 2, 1868, P. L. 55; Act of May 1, 1868, P. L. 108, § 10. It also taxed the shares of state banks. Act of December 22, 1869, P. L. [1870] 1373; Act of June 10, 1881, P. L. 99; Act of June 30, 1885, P. L. 193; Act of June 8, 1891, P. L. 229, (the last named act was sustained in *Commonwealth* v. *Merchants & Manufacturers National Bank,* 168 Pa. 309; 31 Atl. 58; affirmed 167 U. S. 461); Act of July 15, 1897, P. L. 292, amended by Act of May 2, 1925, P. L. 497, and Act of April 25, 1929, P. L. 677. Some of the earlier of these acts provided for the taxation of the shares of trust companies upon the same basis as shares of banks were taxed, but by the Act of June 1, 1889, P. L. 420, trust companies were made liable for a so-called capital stock tax which is in fact a tax upon assets and no tax was levied upon the shares in such companies. The Act of 1907 (*supra,* note 1) was passed in order to conform taxation applicable to trust companies with that then current with respect to banks. As stated in *Commonwealth* v. *Mortgage Trust Co.,* 227 Pa. 163, 175; 76 Atl. 58: "The policy of the commonwealth for more than twenty years was to tax the capital stock of these companies in the same manner as other corporations created under the general corporation act of 1874 were taxed. . . . This method of taxing the capital stock of these institutions continued in force until the act of 1907 was passed. As the trust company business grew in magnitude . . . the question of the proper method of taxing the capital stock of these corporations frequently arose. It was contended in their behalf that banks were their natural competitors; that their business partook of the nature of banking; and that they should be taxed in like manner. As a result of this feeling and the agitation which followed it the act of 1907 was passed. It is apparent that the legislature intended to tax trust companies on the same basis as banks."

other than national bank stock.[10]   And the discrimination found upon the earlier appeal in failing to accord proportionate exemption to federal securities similar to that extended to exempt shares of domestic corporations has been removed, for all are now accorded like treatment by way of deduction.

*Fifth.* The fact that the shareholders of a trust company whose investments consist of national bank stock would pay no tax, because R. S. 5219 permits but a single tax thereon which has been paid by the company as owner, whereas those holding shares in a trust company which owns only other federal securities would not be entitled to a similar total exemption but only to a proportionate deduction unless it could be shown that those securities were purchased from capital, surplus, and undivided profits, does not evidence an illegal discrimination against such securities.   The inability of a state to measure a tax by certain assets exempted by federal law does not preclude it from reckoning in the tax base all those it can reach. And the principle of equal protection does not demand that because one company owns wholly exempt securities, with consequent exemption of its shareholders from the exaction, the state shall abstain from taxing the shareholders of another company whose investments carry no such exemption.

*Sixth.* The state courts have held that nonresident as well as resident shareholders are within the scope of the statute, and we are bound by this construction.   The appellant argues that as thus applied the statute would take their property without due process and deny them equal protection in violation of the Fourteenth Amendment of the Constitution of the United States since the taxing

---

[10] *Van Allen* v. *Assessors,* 3 Wall. 573; *National Bank* v. *Commonwealth,* 9 Wall. 353, 359; *Cleveland Trust Co.* v. *Lander,* 184 U. S. 111; *Des Moines National Bank* v. *Fairweather,* 263 U. S. 103.

power of Pennsylvania is limited to persons and property within her jurisdiction. The contention was overruled by the State Supreme Court, and we think rightly so, upon the authority of *Corry* v. *Baltimore,* 196 U. S. 466. There this court held that under a similar statute Maryland and its municipal subdivisions could impose a levy for revenue upon nonresident shareholders measured by the value of their shares in a domestic corporation. The distinctions between that case and this, to which the appellant points, are not significant. In reliance upon *Tappan* v. *Merchants' National Bank,* 19 Wall. 490, wherein we held it competent for the United States to provide by a statute which became part of the charter of every national bank that the shares shall be taxable to the shareholders by the state wherein the bank is located, the court proceeded, in the *Corry* case, to the proposition that where a state statute made similar provision for the taxation of the shares of nonresident stockholders at the home of a domestic corporation, the legislation did not violate the Fourteenth Amendment.[11] There the corporation was made liable for the payment of the tax and given a right of reimbursement over against the shareholders. Here the appellant has the option either to pay the tax from its general fund or to collect it from the shareholder and pay it over to the State. The distinctions thought by the appellant to require a different ruling in this case are that, in the *Corry* case, the act declaring the liability of the shares of nonresidents antedated the charter of the corporation and provided that the situs of shares owned by nonresidents should, for the purposes of taxation, be at the domicile of the corporation in the state of Mary-

---

[11] The case has been cited repeatedly with approval. *Covington* v. *First National Bank,* 198 U. S. 100, 112; *Hawley* v. *Malden,* 232 U. S. 1, 12; *Rogers* v. *Hennepin County,* 240 U. S. 184, 191; *Rhode Island Hospital Trust Co.* v. *Doughton,* 270 U. S. 69, 81.

land whereas, in the instant case, the statute imposing the tax on shares, which has been held to include the shares of nonresidents, was adopted twenty years after the appellant's incorporation and says nothing about the situs of the shares. We think these differences are unimportant in respect of the principle involved. The state constitution for many years prior to the granting of the charter contained the reserved right to alter, amend, and repeal corporate charters, and every stockholder acquired his shares with full knowledge that his interest in the corporation was subject to regulation and taxation. Moreover, the shares represent a property interest, an aliquot proportion of the whole corporate assets. The shareholders, whether domestic or foreign, depend for the preservation and protection of this property upon the law of the state of the corporation's domicile. The property right so represented is of value, arises where the corporation has its home, and is therefore within the taxing jurisdiction of that state;[12] and this, notwithstanding the ownership of the stock may also be a taxable subject in another state.[13]

The judgment is

*Affirmed.*

---

[12] *Stockholders Bank* v. *Supervisors,* 88 Va. 293; 13 S. E. 407; *Scandinavian-American Bank* v. *Pierce County,* 20 Wash. 155; 55 Pac. 40; *State* v. *Travelers Insurance Co.,* 70 Conn. 590; 40 Atl. 465; *St. Albans* v. *National Car Co.,* 57 Vt. 68; *Koochiching Co.* v. *Mitchell,* 186 Iowa 1216; 173 N. W. 151.

[13] *First Bank Stock Corp.* v. *Minnesota,* 301 U. S. 234.